CHESTER RUTANA AND THERESA M. RUTANA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6759-84.          Filed May 19, 1987.

---

[7]A third case, *Smith v. Commissioner*, T.C. Memo. 1986-101, also involved the IME promotion, and reached a similar result.

*Joseph R. Young, Jr.*, for the petitioners.
*Steven M. Walk*, for the respondent.

OPINION

WILLIAMS, *Judge*: This case is before us on petitioners' motion for award of litigation costs pursuant to section 7430.[1] The issues we must decide are (1) whether the position of the United States in the litigation against petitioners was unreasonable within the meaning of section 7430(c)(2)(A)(i); and (2) if so, the amount of litigation costs to be awarded.

Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for fraud pursuant to section 6653(b) for the taxable years 1975 and 1976. Petitioners paid the deficiency for 1976. They agreed that the deficiency determined for 1975 was correct, but respondent conceded that the statute of limitations barred assessment and collection of the deficiency unless petitioners' 1975 return was false and fraudulent within the meaning of section 6501(c). The sole issue at trial was whether any part of the underpayment of tax for 1975 or 1976 was due to fraud.

The trial in this case was held on February 24 to 25, 1986, at Cleveland, Ohio. On August 4, 1986, we filed our opinion[2] that petitioners were not liable for the addition to tax for fraud for 1975 and 1976, and that the statute of limitations barred assessment and collection of the deficiency for 1975. On September 3, 1986, petitioners filed their motion for award of litigation costs pursuant to section 7430 and Rules 231 and 232.[3] Pursuant to our order, respondent filed his response on November 17, 1986, and filed a supplemental response on December 22, 1986. On January 15, 1987, we granted the parties' joint motion to submit evidence on the amount of litigation costs incurred by way of affidavit and deposition in lieu of a hearing.

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

[2] *Rutana v. Commissioner*, T.C. Memo. 1986-336.

[3] All Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners filed affidavits of counsel on January 20 and March 18, 1987. Petitioners and respondent filed transcripts of depositions of petitioners' counsel on February 26, 1987.

Our opinion filed on August 4, 1986, sets forth the limited education of petitioners, Chester and Theresa Rutana. We found that Chester had difficulty with simple arithmetic and that Theresa had no training in bookkeeping or accounting other than an introductory course in high school in the 1940s. Petitioners' crude records, banking practices, and rudimentary single-entry bookkeeping system were the source of many of the errors that respondent found. Theresa did not know what it meant to reconcile a check register until instructed by John Funcheon, C.P.A., in 1978, whom petitioners retained to assist them during their audit. Until instructed by Funcheon, Theresa was incapable of accurate record keeping. Under her accounting system in 1975 and 1976, it was impossible to determine Rutana Landscaping's income and expenses.

During the audit of petitioners' 1975 and 1976 income tax returns, Scott Simmerman, respondent's agent, discovered a significant disparity between petitioners' gross receipts as listed on monthly receipts sheets that Theresa maintained and the total amount of bank deposits in 1975 and 1976 and requested additional information from Theresa. Theresa cooperated fully with Simmerman. She provided Simmerman consistent explanations for the omitted items. Simmerman also found numerous mathematical errors on Theresa's receipts sheets resulting in understatements of income, including a transposition error on the August 1975 receipts sheet that resulted in a $3,600 understatement of gross receipts. For other months, Theresa's mathematical errors resulted in overstatements of income.

Simmerman did not believe Theresa's explanations for the omitted income items. He also did not believe that the $3,600 understatement of income on the August 1975 receipts sheet was the result of a transposition error. It was not until trial, however, that Simmerman understood the inadequacy of the bookkeeping system that Theresa used.

At trial, we found petitioners to be thoroughly credible witnesses. Their testimony was wholly consistent with the explanations they gave Simmerman and which he recorded

in his interview notes. In part, we discounted Simmerman's testimony because he had little independent recollection of the audit and his testimony was tied almost entirely to his notes. We concluded that petitioners' bookkeeping methods were used out of ignorance and not with an intent to evade taxes.

Section 7430 provides that this Court and other Federal courts may award reasonable litigation costs up to $25,000 to the prevailing party in a civil tax proceeding. Sec. 7430(b)(1). The party seeking litigation costs bears the burden of proving his entitlement to them. Rule 232(e); see *Baker v. Commissioner*, 83 T.C. 822, 827 (1984), vacated and remanded on other grounds 787 F.2d 637 (D.C. Cir. 1986). Respondent concedes that petitioners have exhausted their administrative remedies and substantially prevailed with respect to the sole issue presented, but contends that he acted reasonably in pursuing this litigation and that petitioners are, therefore, not prevailing parties. See sec. 7430(b)(2) and (c)(2).

This Court has interpreted the requirement that the party seeking litigation costs be the prevailing party "in a civil proceeding" to mean that only respondent's actions after a petition is filed may be considered in determining whether respondent acted reasonably. *Wasie v. Commissioner*, 86 T.C. 962 (1986); *Baker v. Commissioner*, 83 T.C. at 827.[4] We do not review the actions of respondent's agents before a petition is filed for reasonableness. We can and must, however, review the events that occur before a petition is filed to determine whether respondent acted reasonably in pursuing the litigation. See *Don Casey Co. v. Commissioner*, 87 T.C. 847, 862 (1986).

---

[4]The circuit courts that have considered this issue are split as to whether a court may also consider administrative actions occurring prior to the filing of a petition in determining whether respondent's actions were reasonable. Compare *Ewing and Thomas, P.A. v. Heye*, 803 F.2d 613 (11th Cir. 1986); *Baker v. Commissioner*, 787 F.2d 637, 641 and n. 8 (D.C. Cir. 1986); *United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440, 1450 (10th Cir. 1985); *Ashburn v. United States*, 740 F.2d 843, 848 (11th Cir. 1984) (holding statute only permits examination of Government's litigation position), with *Powell v. Commissioner*, 791 F.2d 385, 391 (5th Cir. 1986); *Kaufman v. Egger*, 758 F.2d 1, 4 (1st Cir. 1985) (holding both pre-litigation and litigation positions may be examined). The Sixth Circuit, to which this case is appealable, has not considered this issue. The District Court for the Northern District of Ohio, however, has held that actions on the administrative level are relevant in determining the reasonableness of respondent's positions. *Rosenbaum v. I.R.S.*, 615 F. Supp. 23, 24 (N.D. Ohio 1985).

The legislative history of section 7430 provides guidelines for determining whether respondent's conduct was unreasonable:

The committee intends that the determination by the court on this issue is to be made on the basis of the facts and legal precedents relating to the case as revealed in the record. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the .taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).]

We find no evidence that respondent used the cost of litigation to extract concessions from petitioners or that he pursued the litigation to harass or embarrass the petitioners, or out of political motivation. Case law interpreting the Equal Access to Justice Act (28 U.S.C. section 2412(d)(1)(A) (1982)), however, sheds some light on the nature of the "other factors" that we should consider.

Under the Equal Access to Justice Act, a successful litigant must show that the position of the United States was not "substantially justified" to recover litigation costs. 28 U.S.C. sec. 2412(d)(1)(A) (1982). The litigating position of the United States is substantially justified if it has a "reasonable basis both in law and fact." H. Rept. 96-1418, at 10 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News 4953, 4984, 4989. In *Wyandotte Savings Bank v. N.L.R.B.*, 682 F.2d 119, 120 (6th Cir. 1982), the Sixth Circuit equated the "substantially justified" standard with the reasonableness test of section 7430(c)(2)(A)(i). The court held, quoting the legislative history of the Equal Access to Justice Act, that the Government's litigating position was substantially justified because it had a "reasonable basis both in law and fact." *Wyandotte Savings Bank v. N.L.R.B.*, supra (quoting H. Rept. 96-1418, supra). An appeal in this case would lie to the Sixth Circuit. To determine whether respondent's litigating position was reasonable, we, therefore, consider whether respondent had a reasonable basis in law and fact for believing that he could prove fraud as to petitioners. See *Golsen v. Commis-*

*sioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

Respondent argues that our decision for petitioners was based solely on a judgment that petitioners were credible witnesses and Simmerman was not, and that we must consider the reasonableness of respondent's position based only on the facts available to him prior to trial. Respondent further contends that the evidence at all times gave him a reasonable basis in law and fact for believing that he could prove fraud. We agree that we must determine the reasonableness of respondent's position based on what he should have known prior to trial. As we stated in *Devenney v. Commissioner*, 85 T.C. 927, 930 (1985), "our determination as to whether respondent acted reasonably in this case turns upon the legal basis for respondent's position in light of the facts available to him at the time of trial." Respondent, however, had no facts available that would establish clearly and convincingly that petitioners fraudulently understated their income for 1975 and 1976. *Don Casey Co. v. Commissioner, supra.* He argues that petitioners' statements in the course of the audit were self-serving and not credible, yet he had no supportable basis for believing that petitioners were not being truthful. In fact, the evidence available to respondent's counsel, had he investigated it, would have refuted conclusively his client's position. Respondent's counsel cannot ignore the evidence and then attempt to justify an unreasonable litigating position on the ground that our decision was based in part on our assessment of the witnesses' credibility at trial.

Respondent did not have a reasonable basis in law and fact for arguing that Chester acted with intent to evade tax in filing his returns with Theresa in 1975 and 1976. Section 6653(b)(4) provides that in the case of a joint return, the addition to tax for fraud "shall not apply with respect to the tax of the spouse unless some part of the underpayment is due to the fraud of such spouse." Respondent contends that he acted reasonably in pursuing the addition to tax for fraud against Chester because of his "complete involvement in the landscaping business, including the billing process, as well as the level of family personal expenditures," which exceeded reported income during the years in issue. In their

petition, however, petitioners alleged that Chester did not complete high school, did not participate in banking activities, or in the preparation of petitioners' tax returns for 1975 and 1976, and has written only one check in his life, which he prepared improperly. The petition also described petitioners' rudimentary bookkeeping system and indicated that Chester's only role was to record the hours he and his men worked for each customer and the supplies used so that Theresa knew who and how much to bill. Simmerman's audit notes support these allegations. He dealt almost entirely with Theresa in the course of the audit and discovered that she did all of the banking and most of the bookkeeping for Rutana Landscaping.

Respondent nonetheless denied these allegations "for lack of sufficient knowledge or information upon which to base a belief as to the truth of the allegations." If the allegations were true, as we found them to be at trial, they would preclude a finding of fraud as to Chester. See sec. 6653(b)(4). Yet, subsequent to filing his answer, respondent's counsel apparently made no investigation of Chester's role in record keeping and tax return preparation for Rutana Landscaping. Instead, he relied on Simmerman's conclusion, which was based on suspicion and not on fact, that the fraud addition should be assessed against both petitioners. Respondent's counsel has a duty to conduct further investigation to ascertain whether the evidence to be adduced at trial is clear and convincing as to each petitioner. *Don Casey Co. v. Commissioner*, 87 T.C. at 864. Respondent had no basis in law or fact for pursuing the addition to tax for fraud against Chester. Chester is, therefore, a prevailing party within the meaning of section 7430(c)(2) and is entitled to an award of litigation costs.

Respondent also lacked a reasonable basis in law and fact for believing that he could prove that Theresa acted with intent to evade tax in 1975 and 1976. Respondent's counsel relied heavily on Simmerman's · audit report to establish fraud as to Theresa. When he read Simmerman's report, however, respondent's counsel should have been alerted that the evidence was not sufficient to prove fraud by clear and convincing evidence. The report indicated that Simmerman suspected fraud, but contained little evidence to confirm his

suspicions. Again respondent's counsel conducted no further investigation into Theresa's accounting and banking practices.

Factors that courts have considered indicative of fraud include failure to report income over an extended period of time, failure to keep adequate books and records, failure to furnish the Government with access to records, concealment of bank accounts, and the taxpayer's experience or knowledge, and especially knowledge of the tax laws. *Solomon v. Commissioner*, 732 F.2d 1459, 1461 (6th Cir. 1984). Simmerman suspected fraud because Theresa omitted numerous checks from the gross receipts sheets and understated petitioners' income for 1975 and 1976. He also suspected that Theresa was attempting to conceal income because petitioners' expenditures in 1975 and 1976 exceeded their reported gross receipts. Neither petitioners' records nor the audit report, however, reveals any pattern to Theresa's omissions of income. She overreported income almost as frequently as she underreported it. Several checks that were omitted from income in 1976 were received in December and recorded with the January 1977 gross receipts. The checks Theresa omitted from the gross receipts sheets correlated with the unexplained checking account deposits that Simmerman found. In addition, if respondent sought to rely on a pattern of underreporting over a period of time to establish fraud, he should have known that investigation of other years would be necessary because courts generally will not infer fraud from mere understatements of income unless there has been a pattern of consistent underreporting over several years.[5] See, e.g., *Solomon v. Commissioner*, 732 F.2d at 1461 (4-year pattern of underreporting); *Brooks v. Commissioner*, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985) (7-year pattern of

---

[5]On brief, respondent argued that petitioners' income tax returns for 1971 through 1979 show a pattern of underreporting. Their reported gross receipts and net income were significantly lower in the years prior to the audit than in subsequent years. During the same period, petitioners' itemized deductions did not change, leading respondent to conclude that petitioners' income remained fairly consistent from 1971 to 1979 and that they intentionally and consistently underreported their profits from Rutana Landscaping between 1971 and 1976. Respondent did not, however, conduct an audit of petitioners' income tax returns for the years 1971 through 1976 to ascertain whether they had, in fact, underreported their income. Once again his position is based on supposition and suspicion, not on fact.

underreporting); *Otsuki v. Commissioner*, 53 T.C. 96, 108 (1969) (5-year pattern of underreporting).

A significant part of Theresa's underreporting and over-reporting of income resulted from mathematical errors. In 1 month, a transposition error resulted in a $3,600 understatement of gross receipts. The transposition of numbers (in this case 84 to 48) is a common error which Theresa's bookkeeping system did not allow her to catch. Simmerman, and apparently also respondent's counsel preparing this case for trial, simply refused to believe that the understatement resulted from a transposition error, though no other explanation is supportable on the record.

In the course of discovery, respondent's counsel interviewed many of petitioners' customers. He apparently found no evidence indicating that petitioners had additional unreported income because he did not rely on their statements at trial and has not referred to their statements to show that he acted reasonably in pursuing this litigation.

The types of errors that Theresa made, the manner in which she kept records, her limited education, and her willingness to cooperate with Simmerman during the audit should have alerted respondent's counsel that the omissions of income were not likely to have been intentional. Yet, he continued to maintain that Theresa's explanations were self-serving and not credible, with no evidence to support his conclusion. Funcheon, the C.P.A. who reviewed petitioners' records, testified that no one with any knowledge of accounting would keep records the way Theresa did. When he reviewed the records, respondent's counsel should have known that further investigation was needed. Instead, respondent's counsel relied on Simmerman's conclusion that Theresa's records were adequate and did not discover until trial that Theresa was incapable of adequate record keeping and that with the records she kept she had no way of knowing what petitioners' income and expenses were.

The evidence respondent's counsel had available in preparing for trial may have shown that Theresa was negligent. Respondent's counsel, however, had no more than a mere suspicion of fraud, which further investigation would have shown was unwarranted. Because respondent did not have a reasonable basis in law and fact for believing that he could

prove fraud by clear and convincing evidence and knew that litigation would be expensive and burdensome for petitioners, pursuing this case was unreasonable. Our conclusion in *Don Casey Co. v. Commissioner*, is equally applicable here:

Finally, when we weigh the weakness of the Commissioner's case and the fact that the litigation might have been avoided if he had conducted the indicated investigation against the burden imposed upon the petitioner by the Commissioner's pursuing this litigation, we conclude that the Commissioner should not have (and it was unreasonable for him to have) pursued the litigation. Since he chose to do so, we believe that he should bear the petitioner's costs of litigation, and we so hold. [87 T.C. at 864-865.]

Theresa is, therefore, also a prevailing party.

Next we must determine the amount of litigation costs to which petitioners are entitled. Petitioners ask this Court to award $22,720.56 in litigation costs, computed as follows:

| | |
|---|---:|
| Attorney fees | $19,048.00 |
| Court filing fees | 60.00 |
| Trial transcripts | 580.90 |
| Travel expenses | 127.85 |
| Deposition expenses | 401.00 |
| Miscellaneous expenses | 591.61 |
| Fees of expert witness John Funcheon, C.P.A. | 1,911.20 |
| Total | [6]22,720.56 |

Respondent contends that the amount petitioners claim as attorney fees is excessive and reflects the inexperience of counsel in pursuing litigation before this Court. Respondent does not raise any specific objection to the other costs petitioners claim.

---

[6]In their original motion for award of litigation costs filed on Sept. 3, 1986, petitioners requested $20,337.68. At the depositions of petitioners' counsel on Jan. 31, 1987, counsel agreed to reduce their request for attorney fees to eliminate charges for work performed before the petition was filed and, therefore, not incurred in a civil proceeding, and for expenses not properly billed to petitioners' account. In their supplemental motion for award of litigation costs filed on Mar. 18, 1987, counsel increased their original request to reflect the following costs incurred between Nov. 1, 1986, and Jan. 31, 1987, in connection with petitioners' motion for award of litigation costs:

| | |
|---|---:|
| Attorney fees | $2,121.00 |
| Deposition transcripts | 401.00 |
| Miscellaneous expenses | 12.27 |
| Total | 2,534.27 |

If the other conditions for a fee award are met, petitioners' counsel are entitled to be compensated for their time spent litigating the attorney's fee issue. See *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 643 (6th Cir. 1979), cert. denied 447 U.S. 911 (1980).

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), the Fifth Circuit cited 12 factors to consider in determining a reasonable attorney's fee award.[7] Congress, in enacting the Civil Rights Attorney Fee Awards Act of 1976 (Pub. L. 94-559, 90 Stat. 2641 (42 U.S.C. sec. 1988 (1982)), cited with approval the 12 factors set forth in *Johnson*. See S. Rept. 94-1011, at 6 (1976), reprinted in 1980 U.S. Code Cong. & Admin. News 5908, 5913; see also *Hensley v. Eckerhart*, 461 U.S. 424, 429-430 (1983).[8] The Sixth Circuit, however, has rejected the "checklist" approach of *Johnson* in favor of an analytical approach based on the number of hours reasonably expended on the case multiplied by the attorney's normal hourly billing rate. See *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 642-643 (6th Cir. 1979), cert. denied 447 U.S. 911 (1980). The Sixth Circuit concluded that many of the *Johnson* factors would be subsumed in an analysis of the reasonableness of the number of hours expended and the fee charged. The fee award could then be adjusted upward or downward to reflect any unusual factors in the case. *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d at 643. We need not decide whether the *Johnson* or *Northcross* approach is preferable because an appeal in this case would lie to the Sixth Circuit and we are bound by the precedent in that circuit. *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).[9]

---

[7]These factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These 12 factors are consistent with the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980). See *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974).

[8]The U.S. Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7 (1983), that although *Hensley* was a Civil Rights Act case, the standards set forth in *Hensley* "are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party.' "

[9]In *Hensley v. Eckerhart*, 461 U.S. at 429-430, the Supreme Court cited the *Johnson* factors as the appropriate standard for determining a reasonable attorney's fee award. The Supreme Court noted, however, as the Sixth Circuit did in *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d at 642, that many of the *Johnson* factors may be subsumed in the calculation of hours reasonably expended at a reasonable hourly rate. *Hensley v.*

To present petitioners' case, counsel had to become completely familiar with petitioners' bookkeeping and banking system, which required lengthy conversations with Theresa, a review and analysis of the source documents she provided, and the retention of John Funcheon, C.P.A. Counsel had to review petitioners' income tax returns from 1971 through 1979 because respondent alleged that they showed a pattern of underreporting of income. Counsel also had to review in depth the audit report with Theresa because respondent alleged that Theresa was uncooperative, but Theresa had no recollection of her lack of cooperation.[10] Counsel then had to prepare petitioners and expert witness John Funcheon for examination at trial. After trial, counsel performed significant work reviewing the record and preparing petitioners' post-trial briefs.

The hours petitioners' counsel spent on this case may be broken down as follows:

| Activity | Hours |
| --- | --- |
| Preparation of pleadings | 24.8 |
| Discovery | 27 |
| Trial preparation, settlement negotiations, and stipulation of facts | 93 |
| Calendar call and trial | 22.3 |
| Post trial briefs | 89.8 |
| Motion for litigation costs | 34.1 |

Counsel, except for Jeffrey D. Heintz, charged less than their usual hourly rate in this case to help keep petitioners' costs down. Their fees were also less than the prevailing rate in Youngstown, Ohio, of $100 per hour for representation in tax matters. Three attorneys worked on petitioners' case. Joseph R. Young, Jr., counsel of record, charged petitioners $60 per hour for his services. His usual hourly rate was $65. Robert Dineen charged petitioners $75 per hour. His usual hourly rate was $85. Jeffrey D. Heintz charged petitioners his usual hourly rate of $65, but billed significantly fewer hours than the other attorneys in the case.

*Eckerhart*, 461 U.S. at 434 n. 9. Thus, it appears that the *Johnson* and *Northcross* standards are compatible.

[10]Consistent with Theresa's recollection, the record indicated that she fully cooperated with Simmerman.

We find that the hours billed and the rates charged in this case were reasonable, and that $22,720.56, representing the number of hours billed multiplied by the hourly rates charged, plus additional costs incurred, provides a reasonable award. As the Supreme Court stated in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." We, therefore, award petitioners $22,720.56 in litigation costs.

*An appropriate order will be entered.*