GIFFORD M. MAST, JR. AND JUDITH A. MAST, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Mast v. Commissioner
Docket Nos. 43312-85, 43313-85, 43314-85, 43315-85, 43316-85
United States Tax Court
T.C. Memo 1989-438; 1989 Tax Ct. Memo LEXIS 437; 57 T.C.M. (CCH) 1355; T.C.M. (RIA) 89438; August 17, 1989
David J. Duez, for the petitioners. Albert B. Kerkhove, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: These cases involved primarily the value of certain interests in a large collection of antique stereoscopic negative glass plates and related material, known as the Keystone-Mast Collection, which were donated by the petitioners to the University of California at Riverside (UCR) in 1977 and 1981. On their income tax returns for those years petitioners claimed a value of $ 1,427,253 for the entire collection and deducted varying portions of that value as charitable *438 contributions on the returns of the various petitioners. Respondent simultaneously issued notices of deficiency to each of the petitioners on September 6, 1985, which completely denied petitioners' charitable deductions, based on a revenue agent engineer's valuation of zero for the Collection. Petitioners all filed petitions with this Court on December 5, 1985. After a trial at which petitioners offered the testimony of three experts and respondent offered the testimony of one expert on the value of the Collection, we concluded that the value of the entire Collection was $ 1,250,000 and that petitioners were entitled to deductions for their respective shares of the Collection donated by them to UCR. We now have before us Petitioners' Motion for Litigation Costs, under section 7430, Internal Revenue Code. While petitioners submitted an affidavit listing costs incurred of more than $ 25,000, they limit their claim to $ 25,000 as provided by section 7430, prior to its amendment by the Tax Reform Act of 1986 and the Technical and Miscellaneous Revenue Act of 1988. Respondent filed a written response to petitioners' motion requesting the Court to deny the motion. *439 Respondent does not dispute the reasonableness of the costs set forth in petitioners' affidavit. A hearing on the motion is not deemed necessary. As required by section 7430(a) this was a civil proceeding brought against the United States in connection with the determination of a tax and was brought in a court of the United States, the United States Tax Court. Petitioners are the prevailing parties and may be awarded a judgment for reasonable litigation costs incurred in such proceeding if they meet the requirements of section 7430. Those requirements are (1) that petitioners must have exhausted their administrative remedies; (2) that they must establish that the position of the United States was unreasonable; and (3) that they substantially prevailed with respect to the amount in controversy or with respect to the most significant issues presented. [2]
We find that petitioners have met all the requirements of section 7430 *440 of the Code and Rule 231 of the Rules of Practice and Procedure of the United States Tax Court and are entitled to reasonable litigation costs. Since respondent does not dispute the reasonableness of the costs claimed by petitioners and they appear to be reasonable to us we grant petitioners' motion and award them $ 25,000 as litigation costs. Petitioners exhausted their administrative remedies. Shortly after they received Notices of Proposed Deficiency, they timely filed protests with the Appeals Division of the Internal Revenue Service, attended a meeting with an IRS appeals officer and engaged in other correspondence with the appeals officer. When this effort failed to bring about an administrative resolution, notices of deficiency were issued by respondent and petitioners timely filed petitions with this Court. Petitioners substantially prevailed with respect to the amount in controversy and the most significant issue, being the value of the Keystone-Mast Collection donated to UCR. Petitioners claimed its value to be $ 1,427,253; respondent determined it to be zero. The Court re-determined its value to be $ 1,250,000. The Court also held that petitioners were entitled to *441 deduct disproportionate portions of their undivided interests in the Collection. However, respondent urges that petitioners failed to meet the third requirement of the law because they failed to prove that the position of the United States in this proceeding was unreasonable. Whether we look at the position taken by respondent prior to the filing of the petitions or only subsequent thereto we find that the position taken by the United States was unreasonable. See Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988), in which this Court held that the substantial justification standard adopted by the Tax Reform Act of 1986 was not a change from the prior reasonableness standard. In his notices of proposed deficiencies sent to petitioners in 1985 respondent determined that the value of the Collection was zero, based upon a report by an IRS engineer. Petitioners filed protests and at conferences with the IRS appellate officer assigned to the cases, presented the valuation report of Mead B. Kibbey, an appraiser who had spent 30 to 40 hours examining the Collection, who found the value to be $ 1,427,253 by applying a per unit *442 value to the various items in the Collection. When the parties could not agree on a value, respondent issued notices of deficiency in which he determined the value of the Collection to be zero. Petitioners filed petitions for redetermination with this Court on December 5, 1985, and employed another appraiser, Marjorie Neikrug (Neikrug), an experienced appraiser of photographic archives, to value the Collection. After spending 35 hours examining the Collection, Neikrug estimated its value to be $ 1,592,611, based on per unit values. This appraisal was filed with respondent and petitioners discussed it with respondent's appeals officer. Respondent rejected the appraisals and advised petitioners that he was retaining an expert to make an appraisal. Respondent retained John S. Waldsmith (Waldsmith), a dealer in stereophotographic prints to value the Collection. Waldsmith subsequently spent 102 hours extensively examining the Collection at UCR and arrived at a valuation of $ 1,207,500 by breaking the Collection into segments and assigning per unit value for items in each segment. His appraisal report was received by respondent in October of 1986 but a copy was not given to petitioners. *443 However, respondent did not abandon the position he took in the notices of deficiency, i.e., that the value of the Collection was zero. Respondent refused to give petitioners a copy of Waldsmith's report, but advised them that he was engaging another expert to make an appraisal. Respondent finally contacted Penelope A. Dixon (Dixon) concerning an appraisal in July of 1987, after the cases were placed on a trial calendar to be held in September of 1987. Dixon was not retained by respondent to make an appraisal until August 12, 1987. As a result Dixon was forced to prepare her appraisal report without physically examining the Collection. In this report, a copy of which petitioners received on September 11, 1987, just four days prior to call of the cases on the trial calendar, Dixon appraised the Collection at $ 500,000. Her appraisal was based on sales prices of allegedly comparable collections. Because this was a radically different method than used by petitioners' appraisers it was not possible to reconcile her approach with the petitioners' appraisals. Dixon did arrange to review the Collection several days before the trial, after which she lowered her appraisal value to $ 450,000. *444 At the trial petitioners offered as their evidence the appraisal report of Waldsmith and his testimony. Respondent did not offer any evidence to support his determination that the value of the Collection was zero. Nevertheless respondent did not amend his answer to change his position taken in the notice of deficiency that the value of the Collection was zero. Despite the fact that respondent failed to comply with the Court's Rule 143(f) requiring that expert witness reports shall be submitted to the Court and the opposing party not later than 15 days prior to the call of the trial calendar on which the cases shall appear, the Court permitted Dixon's report to be filed as a part of the record in these cases in order to assist the Court in learning more about the property being valued. In cases such as this we think it was unreasonable for respondent to determine, without the advice of an expert, that a collection such as the Keystone-Mast Collection had a zero value and then stick with that determination throughout the trial despite the fact that he had no evidence to support his position and petitioners provided the testimony of three qualified appraisers who valued the Collection *445 near the same amount as claimed by petitioners. Compare Frisch v. Commissioner, 87 T.C. 838 (1986) and Minahan v. Commissioner, 88 T.C. 492 (1987). In fact respondent's own expert, Dixon, did not support respondent's position. See Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987). The first expert engaged by respondent, Waldsmith, arrived at a value that was close to the value claimed by petitioners, but respondent chose to ignore this witness and engage someone else who might support respondent's position. Even this was done so late that no interested party had time to analyze the witness' testimony before she took the stand. When the property being valued is as unique as was the Collection it is very important that the other party be given a copy of the appraisal report long enough before the trial to analyze it for possible flaws. That is the purpose of the Court's Rule 143(f). Respondent had ample time, about two years between the time his determination was made and the trial, to review his determination and get expert advice. Furthermore, we do not believe respondent was reasonable, after hearing the opinions of the experts, *446 not to try to reach an agreement with petitioners that would protect the rights of both parties, without attaching to it a condition that petitioners concede the other issue in the cases. Respondent has failed to provide us with any authorities or evidence to support his second position that petitioners were not entitled to deduct as charitable contributions their disproportionate transfers of interests in the Collection. We find nothing in the record to support such a position. For these and other reasons we have concluded that petitioners are entitled to receive reasonable litigation costs from respondent which we have determined to be $ 25,000. An appropriate order will be entered. Footnotes
1. Cases of the following petitioners are consolidated herewith: Terrill A. Mast and Melinda L. Mast, docket No. 43313-85; Eric W. Mast and Martha E. Mast, docket No. 43314-85; Sara B. Mast, docket No. 43315-85; and Roderic B. Mast, docket No. 43316-85.↩
2. Sec. 7430↩ was amended by sec. 1551(a) of the Tax Reform Act of 1986, which was effective for actions commenced after December 31, 1985. Since the petitions in these cases were filed December 5, 1985, those amendments do not apply to these cases.