HYDE INSURANCE ASSOCIATES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hyde Ins. Assocs., Inc. v. Commissioner
Docket No. 20133-90
United States Tax Court
T.C. Memo 1993-240; 1993 Tax Ct. Memo LEXIS 249; 65 T.C.M. (CCH) 2818; May 27, 1993, Filed *249 For petitioner: Brian F.D. Lavelle. For respondent: Frank C. McClanahan. JACOBS
JACOBS
MEMORANDUM OPINION JACOBS, Judge: This matter is before the Court on petitioner's supplemental motion for litigation and administrative costs, pursuant to Rule 231 and section 7430, and petitioner's motion to strike portions of respondent's objection to petitioner's supplemental motion for litigation and administrative costs, pursuant to Rule 52. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code effective for the years in issue. By statutory notice of deficiency, dated June 29, 1990, respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Year
Sec.
Sec.
Sec.
Ended
Deficiency
6653(a)(1)
6653(a)(2)
6661
4/30/84
$ 718,048
$ 35,902
[1]
$ 179,512
4/30/85
99,346
4,967
[1]
24,837
*250 On September 10, 1990, petitioner filed a petition seeking a redetermination of its tax deficiencies and additions to tax as determined by respondent in the deficiency notice. [1]
On March 2, 1992, petitioner's case was called from the calendar for a trial session of this Court in Winston-Salem, North Carolina. The parties appeared and filed a stipulated decision document in which they agreed to settle the case for less than 10 percent of the aggregated amounts of the tax deficiencies and additions to tax reflected in the deficiency notice. Thus, the *251 case was settled without a trial. Petitioner timely filed a motion for litigation and administrative costs under section 7430. Pursuant to an order of this Court, petitioner filed a supplemental motion for litigation and administrative costs on April 6, 1992, in order to meet the requirements of Rule 231(b) as to the motion's contents. On September 8, 1992, respondent filed an objection to petitioner's supplemental motion for litigation and administrative costs. On October 1, 1992, petitioner filed a motion to strike portions of paragraph 7 from respondent's objection. As the parties have settled their disputes with respect to all of the tax deficiencies and additions to tax determined by respondent in this case, the issues before us pertain only to: (1) Whether petitioner's motion to strike portions of respondent's objection to petitioner's supplemental motion should be granted, (2) whether petitioner qualifies as the "prevailing party" entitled to an award of litigation and administrative costs under section 7430, and (3) if petitioner does so qualify, what costs are reasonable within the meaning of section 7430. Due to concessions by both parties, the primary question in determining *252 whether petitioner is entitled to an award under section 7430 is whether respondent was "substantially justified" in taking the position that gain from the sale of petitioner's assets in liquidation is recognizable because of a failure to qualify for nonrecognition-of-gain treatment under former section 337(a). [2] Respondent has since conceded that the gain was not recognizable under section 337(a), but argues that the position taken in the notice of deficiency (i.e. that the gain from the sale of petitioner's assets was recognizable) was substantially justified. Petitioner contends that respondent was not justified in concluding that section 337(a) was inapplicable to the gain from the sale of its assets, because in doing so respondent relied on an unexecuted preliminary purchase agreement and misinterpreted both the final purchase agreement and section 1.337-2(a), Income Tax Regs., 20 Fed. Reg. 8904 (Dec. 3, 1955).
*253 For the reasons stated below, we agree with respondent. Accordingly, we hold that petitioner's motion for litigation and administrative costs, as well as petitioner's motion to strike, should be denied. The following facts are based on the entire record, including the pleadings, the stipulated decision document, and the exhibits submitted by the parties with respect to the two motions before us. From June 1978 to January 1985, petitioner, Hyde Insurance Associates, Inc., was a corporation duly organized and existing under the laws of North Carolina. Petitioner was engaged in business as a general insurance agency, and its principal place of business was Ashville, North Carolina. Petitioner reported its income using the accrual method of accounting and on the basis of a fiscal year ended April 30. At all times relevant hereto, William N. Hyde was the president of petitioner corporation; its three principal shareholders were William N. Hyde, William T. Phillips, Jr., and Lesa P. Snider. On January 6, 1984, petitioner's shareholders adopted a plan of complete liquidation (hereinafter the plan or liquidation plan) with the intention of qualifying the gain from the sale of petitioner's *254 assets for nonrecognition treatment under section 337. For fiscal years 1984 and 1985, section 337(a) provided as follows: (a) General Rule. -- If, within the 12-month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims, then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period. [Emphasis added.]
Pursuant to the requirements of section 337(a), the plan directed that petitioner's officers complete the liquidation of petitioner's assets within 12 months from January 6, 1984. The plan was set forth in a resolution contained in the minutes of a January 6, 1984, shareholders meeting. Subsequently, a certified copy of the plan was filed with the Internal Revenue Service (hereinafter IRS). Several years before the adoption of the liquidation plan, petitioner had begun negotiating for the sale of its assets to a third party, Robinson-Conner of North Carolina, Inc., a North Carolina corporation (hereinafter Buyer). During an extended negotiations *255 period, petitioner and Buyer developed a 32-page rough draft of a purchase agreement. The first page of the unexecuted rough draft was stamped "Preliminary Draft - For Discussion Purposes Only" (hereinafter preliminary draft). Several clauses in the preliminary draft were revised before petitioner and Buyer arrived at their final draft of the purchase agreement which they ultimately executed (hereinafter final purchase agreement). Several clauses in the preliminary draft indicate that petitioner and Buyer originally contemplated that January 1, 1984, would be the date on which ownership of petitioner's insurance agency would be transferred to Buyer. For example, the first paragraph of the preliminary draft provides as follows: This Agreement made as of January 1, 1984, between Robinson-Conner of North Carolina, Inc., a North Carolina corporation ("Purchaser"), Hyde Insurance Associates, Inc., a North Carolina corporation ("Seller") and Wallace N. Hyde, William T. Phillips, Jr. and Lesa P. Snider ("Shareholders"). [Emphasis added.]
In addition, Article 1 of the preliminary draft states that the agreement "covers and constitutes the acquisition and purchase by Purchaser *256 of certain of the assets of Seller as of January 1, 1984." Article 1.2 of the preliminary draft lists the specific assets to be sold under the agreement by petitioner. Listed among the assets to be transferred to Buyer was "a list of clients of Seller as of January 1, 1984" and "insurance written on policies for coverage to be effective from and after January 1, 1984." The clause of the preliminary draft entitled "Assumption of Liabilities of Seller" states that "Seller * * * agrees to timely pay to the various insurance carriers * * * all of their respective accounts payable in connection with insurance policies sold by Seller prior to January 1, 1984." Finally, the preliminary draft states that the "closing" of the agreement was to take place "on January 4, 1984, at the offices of Seller's legal counsel." The first paragraph of the final purchase agreement is identical to the first paragraph of the preliminary draft except that it refers to two dates: This Agreement dated January 6, 1984 and made as of January 1, 1984, between Robinson-Conner of North Carolina, Inc., a North Carolina corporation ("Purchaser"), Hyde Insurance Associates, Inc., a North Carolina corporation *257 ("Seller") and Wallace N. Hyde, William T. Phillips, Jr. and Lesa P. Snider ("Shareholders"). [Emphasis added.]
Although the final purchase agreement indicates that other additions (and deletions) were made to the preliminary draft, most of the references to January 1, 1984, were not changed. For example, the final purchase agreement states that the agreement covers certain assets of the "Seller as of January 1, 1984" including "a list of clients of Seller as of January 1, 1984" and "all prepayments received by Seller for insurance written on policies for coverage to be effective from and after January 1, 1984." The reference to January 1, 1984, in the clause entitled "Assumption of Liabilities of Seller", which appears in the preliminary draft, was left unchanged in the final purchase agreement. The final purchase agreement provides that the "closing" shall take place on "January 6, 1984, at the offices of Seller's legal counsel." The last paragraph of the final purchase agreement, Article 11.9, states that "This agreement shall be construed in accordance with, and shall be governed by, the laws of the State of North Carolina. In Witness Whereof, Purchaser, Seller and Shareholders *258 have caused this Agreement to be executed * * * as of the day and year hereinabove set forth." The last paragraph was followed by the signatures of petitioner's and Buyer's principal shareholders and officers. However, there was no typewritten or handwritten notation indicating the date the final purchase agreement was actually signed. Both the preliminary draft and the final purchase agreement were subsequently submitted to the IRS during the audit of petitioner's tax returns. Between January 2 and January 5, 1985, all of the assets of petitioner were distributed in complete liquidation, except the assets retained to meet claims. Petitioner timely filed its U.S. corporate income tax returns, Forms 1120, for its final 2 fiscal years, 1984 and 1985, with the IRS Service Center in Memphis, Tennessee. On Schedule M-1 of its return for fiscal year 1984, petitioner reported that it had sold the underlying assets of the insurance agency for a purchase price of $ 2,180,000 but claimed that its entire gain on the sale was not recognizable because petitioner had met the requirements of section 337(a). Along with its tax return for fiscal year 1985, petitioner filed Form 966, Corporate *259 Dissolution or Liquidation. Subsequently, petitioner was notified that its 1984 and 1985 fiscal year tax returns had been selected by the IRS for audit. Petitioner agreed to extend the 3-year limitations period on tax assessment provided by section 6501 to June 30, 1990, in order to provide the IRS with sufficient time to review petitioner's income tax returns. The audit was conducted by the Greensboro District Director's Office, Asheville, North Carolina. On February 13, 1990, upon completion of the audit, the IRS sent petitioner an audit report which proposed tax deficiencies and additions to tax for petitioner's 1984 and 1985 fiscal years. The report proposed numerous adjustments to petitioner's 1984 and 1985 fiscal year tax returns and concluded that the provisions of section 337(a) were not applicable because the sale of petitioner's assets occurred prior to the date petitioner had adopted its liquidation plan, and therefore the gain realized on the sale was recognizable. On March 13, 1990, petitioner filed a protest to the audit report and requested an IRS administrative Appeals conference. Petitioner's request for an Appeals conference was denied because, according to *260 respondent, petitioner refused to further extend the 3-year limitations period on assessment which was due to end on June 30, 1990. Petitioner has not denied this particular allegation. On June 26, 1990, 4 days prior to the date the limitations period was due to expire, the administrative file and a proposed deficiency notice were submitted to district counsel for his approval. (The final purchase agreement and the preliminary draft were among the documents contained in the administrative file.) [3]
According to respondent, it was difficult to ascertain, from the documents included in the administrative file, whether petitioner's assets were sold on January 1, 1984, or January 6, 1984. During the audit phase, it was established that petitioner had adopted its liquidation plan on January 6, 1984. Thus, if the sale of petitioner's assets was deemed to have occurred *261 on or before January 5, 1984, gain from the sale would be recognizable because the sale would have occurred prior to the adoption of the plan of liquidation. According to respondent, district counsel approved the issuance of the deficiency notice, in part, because a large portion of petitioner's tax deficiencies were attributable to a factual issue -- the date petitioner's assets were sold in liquidation of its insurance business. In the Explanation of Adjustments attached to the deficiency notice, respondent stated that petitioner had a recognizable gain of $ 1,980,407 for fiscal year 1984 on the sale of the insurance agency. Accordingly, respondent increased petitioner's taxable income for that year by $ 1,980,407. In its petition, petitioner disputed all of the tax deficiencies and additions to tax as determined by respondent in the deficiency notice. Petitioner also asserted that at no time prior to January 6, 1984 (the date the plan of liquidation was adopted), did Buyer pay, or have an obligation to pay, petitioner any money, such as earnest money or a downpayment, for the purchase of petitioner's insurance agency, and that at no time prior to the closing on January 6, *262 1984, did Buyer have, or have a right to, title, possession, or control of petitioner's assets that were sold to Buyer. In paragraph 6(q) of the petition, petitioner stated that "The Agreement provided that the sale was effective as of January 1, 1984 which was for the convenience of the parties merely to assist in the orderly transfer of Petitioner's business to the Buyer." (Emphasis added.) In the answer, filed November 9, 1990, respondent admitted that prior to January 6, 1984, Buyer did not actually pay petitioner any earnest money or down payment money for the purchase of petitioner's insurance agency and that prior to the closing on January 6, 1984, Buyer did not have actual title, possession, or control of petitioner's assets. However, respondent denied that Buyer did not have "an obligation" to pay petitioner any money prior to January 6, 1984, and further denied that Buyer did not have "a right to" title, possession, or control of petitioner's assets prior to January 6, 1984. Respondent also denied that the sale was made effective as of January 1, 1984, "for the convenience of the parties merely to assist in the orderly transfer of Petitioner's business to the Buyer." *263 On November 6, 1990, the same date the answer was mailed to petitioner, counsel for respondent transferred petitioner's case to the Appeals office in Greensboro, North Carolina, apparently because it appeared that petitioner's case would be settled without a trial. It is not clear from the record how long respondent "held out" before finally conceding that the sale of petitioner's assets was not taxable under section 337(a). Nor is it clear why respondent conceded the date-of-sale issue; what further documentation petitioner submitted, if any, after its case was transferred to the IRS Appeals office; or when the parties actually reached their final settlement agreement. In any event, the parties filed with the Court a stipulated settlement document on March 2, 1992, in which they agreed on the total amounts of the tax deficiencies and additions to tax owed by petitioner. Specifically, the parties stipulated that for petitioner's 1984 fiscal year, there is a deficiency of $ 43,910 in Federal income tax; an addition to tax of $ 2,195, pursuant to section 6653(a)(1); an addition to tax equal to 50 percent of the statutory interest due on $ 6,042 of the deficiency, pursuant to section *264 6653(a)(2); and an addition to tax of $ 2,217, pursuant to section 6661. For petitioner's 1985 fiscal year, the parties stipulated that there is a deficiency in Federal income tax of $ 34,619, and an addition to tax of $ 3,641, pursuant to section 6661. On March 2, 1992, petitioner filed with the Court a motion for litigation and administrative costs pursuant to section 7430; such motion was later supplemented. In its motion, petitioner claims a total of $ 25,562.12 in attorney's fees and expenses under section 7430. It is not clear from petitioner's motion, however, whether the costs claimed by petitioner are attributable solely to the preparation of its argument that the gain from the sale of its assets was not recognizable under section 337(a). Respondent timely filed an objection to petitioner's motion for litigation and administrative costs, and petitioner subsequently filed a motion to strike portions of paragraph 7 from respondent's objection. The first issue for decision is whether petitioner's motion to strike portions of respondent's objection should be granted. Rule 52 authorizes the Court to strike from any pleading any insufficient claim or defense or any redundant, *265 immaterial, impertinent, frivolous, or scandalous matter. Allen v. Commissioner, 71 T.C. 577, 579 (1979). With respect to motions to strike, in Estate of Jephson v. Commissioner, 81 T.C. 999, 1001 (1983), we stated the following: Motions to strike * * * have not been favored by the Federal Courts. "Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." * * * "A motion to strike should be granted only when the allegations have no possible relation to the controversy. When the court is in doubt whether under any contingency the matter may raise an issue, the motion should be denied." * * * In addition, a motion to strike will usually not be granted unless there is a showing of prejudice to the moving party. * * * [Citations omitted.]
Petitioner contends that paragraphs 7(b) through 7(j) of respondent's objection to petitioner's motion for costs should be stricken from the record because those subparagraphs "fail to state a defense that the position of Respondent was substantially justified" and "contain redundant, immaterial, *266 impertinent and scandalous matter." In particular, petitioner argues that respondent's statements within those subparagraphs "would mislead the Court" in that they refer to the preliminary draft of the purchase agreement as "the first agreement", thus inferring the existence of more than one purchase agreement. The first, second, and third sentences of subparagraph 7(b) of respondent's objection are as follows: Exhibits D and E to petitioner's motion are partial copies of a 'preliminary' and final agreement under which petitioner contends that its assets were sold in complete liquidation. The first agreement was dated January 1, 1984 (Exhibit D -- When the inscription 'Preliminary Draft' was added is not known). The second agreement (Exhibit E) was dated January 6, 1984 and 'made as of January 1, 1984.'
We find that the first two sentences of subparagraph 7(b) make it sufficiently clear that the rough draft of the purchase agreement may have been intended by petitioner and Buyer to be "preliminary" and that respondent's subsequent references to the "first agreement" or the "second agreement" are to be read in that context. Moreover, the statements set forth in these sentences *267 properly raise an issue as to the weight respondent should reasonably have accorded the preliminary draft in interpreting the meaning of the final purchase agreement's terms. We therefore conclude that subparagraphs 7(b) through 7(j) are not misleading to the Court or prejudicial to petitioner with respect to this issue. Estate of Jephson v. Commissioner, supra at 1001. Further, we are unconvinced by petitioner's remaining arguments in its motion to strike, the crux of which is that subparagraphs 7(b) through 7(j) contain immaterial and redundant statements by respondent. To the contrary, we find that those subparagraphs explain, in a concise manner, what facts were known to district counsel at the time he approved the issuance of the deficiency notice, the nature of the parties' date-of-sale controversy, and the events that occurred after the deficiency notice was issued. Such statements are directly relevant to the determination of whether respondent's position was "substantially justified" within the meaning of section 7430. We therefore conclude that petitioner has failed to show that subparagraphs 7(b) through 7(j) of respondent's objection *268 to petitioner's motion for litigation and administrative costs have "no possible relation" to the issues presently before us. Estate of Jephson v. Commissioner, supra.Accordingly, petitioner's motion to strike will be denied. Rule 52. The next issue for decision is whether petitioner's motion for litigation and administrative costs should be granted. Section 7430(a) provides, generally, that a taxpayer who has substantially prevailed in a civil tax proceeding may be awarded reasonable litigation and administrative costs incurred in such proceeding. In order to be entitled to an award of litigation and administrative costs, the taxpayer must show that he was the "prevailing party" by establishing (1) that the position of the United States in the civil proceeding was not substantially justified, sec. 7430(c)(4)(A)(i); (2) that the taxpayer substantially prevailed in the proceeding with respect to either the amount in controversy or the primary issues presented, sec. 7430(c)(4)(A)(ii); and (3) that, at the commencement of the proceeding, the taxpayer met the net worth requirements specified in sec. 7430(c)(4)(A)(iii). In addition, costs will *269 not be awarded unless the taxpayer can demonstrate that he exhausted the administrative remedies available to him with the Internal Revenue Service, sec. 7430(b)(1); that the taxpayer did not unreasonably protract any portion of the proceedings for which litigation or administrative costs would otherwise be awarded, sec. 7430(b)(4); and that the amount of costs claimed is reasonable, sec. 7430(c)(1). These are conjunctive requirements which must all be met in order for an award to be made to petitioner. Sher v. Commissioner, 89 T.C. 79 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). Petitioner has the burden of proof as to each requirement. Rule 232(e); Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990). The parties agree that the most significant issue in this case was the date petitioner sold the assets of its insurance agency to Buyer. If the sale of petitioner's assets was deemed to have occurred on January 6, 1984, as petitioner has maintained, the *270 $ 1,980,407 gain realized on the sale would not be recognizable due to the application of section 337(a). However, if the sale of petitioner's assets was deemed to have occurred on January 1, 1984, as respondent initially maintained, the $ 1,980,407 gain realized on the sale would be recognizable because section 337(a) would not apply to the sale. Respondent concedes that, based on the parties' settlement agreement, petitioner has substantially prevailed with respect to the most significant issue in this case and with respect to the amount in controversy. Respondent also concedes that petitioner has met the net worth requirements, has exhausted administrative remedies, and has not unreasonably protracted the Court proceeding. However, respondent contends that petitioner is nonetheless not entitled to litigation or administrative costs for the following reasons: First, because petitioner has not shown that respondent's position with respect to the most significant issue (the date of sale) was not substantially justified, and second, because the attorney's fees and administrative costs claimed by petitioner are not reasonable in amount. For the reasons stated below, we conclude *271 that petitioner has failed to prove that the position of respondent was not substantially justified. Accordingly, as petitioner has failed to meet one of the prerequisites to its qualification as the "prevailing party" within the meaning of section 7430(c)(4)(A), we hold that it is not entitled to an award of litigation or administrative costs. Whether respondent's position is substantially justified or not turns on a finding of reasonableness, based on all the facts and circumstances, as well as legal precedents relating to the case. [4]Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990); Sher v. Commissioner, supra at 84; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). *272 The legislative history of section 7430 provides additional guidelines for determining whether respondent's conduct was substantially justified. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).]
Section 7430(c)(7) defines the "position of the United States" to include: (A) the position taken by the United States in a judicial proceeding * * *, and (B) the position taken in an administrative proceeding * * * as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency.
Although petitioner's case was ultimately settled by the IRS Appeals office *273 in Greensboro, North Carolina, after the pleadings were filed, petitioner's case was not the subject of an administrative appeal. We therefore evaluate respondent's position as of the date of the notice of deficiency. We have reviewed those events that occurred before the issuance of the deficiency notice only "to determine whether respondent acted reasonably in pursuing the litigation in light of what he knew at the time the litigation commenced." Sher v. Commissioner, 89 T.C. 79, 85 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Rutana v. Commissioner, 88 T.C. 1329, 1332 (1987). Petitioner contends that respondent was not substantially justified in concluding that the sale of petitioner's assets occurred on January 1, 1984, as opposed to January 6, 1984, because, according to petitioner, respondent relied on the preliminary draft of the purchase agreement which was never signed, and misinterpreted the terms of the final purchase agreement which was signed by petitioner and Buyer. Petitioner further argues that respondent erroneously relied on "other unsigned paper documents" in approving the *274 issuance of the deficiency notice and overlooked facts indicating that Buyer did not pay any earnest money or have title, possession, or control over petitioner's assets prior to January 6, 1984. Petitioner also contends that respondent disregarded section 1.337-2(a), Income Tax Regs., in maintaining the position that the sale occurred on January 1, 1984. Section 1.337-2(a), Income Tax Regs., as in effect in 1984, provided in pertinent part as follows: The date on which a sale occurs depends primarily upon the intent of the parties to be gathered from the terms of the contract and the surrounding circumstances. In ascertaining whether a sale or exchange occurs on or after the date on which the plan of complete liquidation is adopted, the fact that negotiations for sale may have been commenced, either by the corporation or its shareholders, or both shall be disregarded. Moreover, an executory contract to sell is to be distinguished from a contract of sale. Ordinarily, a sale has not occurred when a contract to sell has been entered into but title and possession of the property have not been transferred and the obligation of the seller to sell or the buyer to buy is conditional. *275 [Emphasis added.]
Sec. 1.337-2(a), Income Tax Regs., 20 Fed. Reg. 8904 (Dec. 3, 1955). There are several reasons why we are unpersuaded by petitioner's arguments. First, based on the record before us, we believe petitioner exaggerates respondent's reliance on the unexecuted preliminary draft and ignores the ambiguity of the contract terms appearing on the face of the final purchase agreement. The first paragraph of the final purchase agreement is confusing because it refers to two dates: "This Agreement dated January 6, 1984 and made as of January 1, 1984," between Robinson-Conner of North Carolina, Inc. (Purchaser) and Hyde Insurance Associates, Inc. (Seller). Looking solely to the face of the final purchase agreement, either of the two dates could reasonably be construed to be the date of sale. Given the ambiguity of the dates in the first paragraph of the final purchase agreement, we believe respondent used the preliminary purchase agreement to interpret the meaning of the terms contained in the final purchase agreement and further, that it was reasonable for respondent to do so. Second, although petitioner alleges that respondent relied *276 on "other unsigned paper documents" in concluding that petitioner's assets were sold on January 1, 1984, petitioner has not specified the particular documents respondent allegedly relied on, nor has petitioner produced such documents. Petitioner has not submitted any evidence, other than the final purchase agreement, to support its allegations that respondent overlooked other factors indicating that Buyer did not have an obligation to make a payment to petitioner prior to January 6, 1984, or that Buyer did not have actual or constructive title, possession, or control of petitioner's assets prior to January 6, 1984. We disagree with petitioner's argument that the final purchase agreement constitutes sufficient proof in itself that the sale of petitioner's assets to Buyer occurred on January 6, 1984. To the contrary, certain paragraphs in the final purchase agreement seem to indicate that the risk of loss was intended to pass to Buyer prior to January 6, 1984. For example, the paragraph entitled "Assumption of Liabilities of Seller" implies that Buyer was to assume all of petitioner's accounts payable that were incurred in connection with insurance policies sold after January 1, *277 1984. We are similarly unpersuaded by petitioner's emphasis on the fact that respondent, in the deficiency notice, determined income tax deficiencies and additions to tax in excess of $ 1 million dollars, but ultimately settled petitioner's case for a fraction of that amount. We agree with petitioner, that at first blush, the dollar amount of respondent's concessions casts doubt on the reasonableness of respondent's litigating position in this case. However, the fact that respondent eventually loses or concedes the case is not sufficient to establish that respondent's position was unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Vanderpol v. Commissioner, 91 T.C. 367, 370 (1988); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986). Whenever there is a factual determination with respect to a tax return, respondent is not obliged to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims. Sokol v. Commissioner, supra at 765 n.10; see also Johnson v. Commissioner, T.C. Memo. 1991-447. *278 In this case, petitioner apparently failed to submit documentary evidence to support its claim that the sale of its assets came within the scope of section 337(a) until months after its case had commenced in this Court. Finally, we observe that just prior to the issuance of the deficiency notice, respondent had a very little time to determine the date of the sale of petitioner's assets. The 3-year limitations period on assessment was due to end within 4 days of district counsel's receipt of the administrative file and the proposed deficiency notice. Given this fact and the ambiguity of the final purchase agreement as to the date petitioner's assets were sold, we find that respondent was substantially justified in taking a protective position in the deficiency notice, and to maintain that litigating position, until petitioner submitted sufficient proof that it had met all the requirements for nonrecognition of tax under section 337(a). Having held that the position taken by respondent throughout this proceeding was substantially justified within the meaning of section 7430(c)(4)(A)(i), there is no need to determine whether the costs claimed by petitioner are reasonable in amount. *279 Accordingly, we hold that petitioner is not a "prevailing party" entitled to an award of litigation or administrative costs under section 7430. Petitioner's motion for litigation and administrative costs will be denied. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. At the time the petition was filed, petitioner, Hyde Insurance Associates, Inc., was a dissolved North Carolina corporation that was winding down its business as a general insurance agency. However, because petitioner has the capacity under the laws of North Carolina to prosecute or defend any legal action in its corporate name, N.C. Gen. Stat. sec. 55-114(b), (d)↩ (1982), petitioner's capacity to litigate in this Court is not disputed in this case. Rule 60(c).
2. All references to sec. 337(a) are to sec. 337(a), I.R.C. 1954, as amended by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 1901(a)(46)(A), 90 Stat. 1772, effective for taxable years beginning after Dec. 31, 1976. Congress repealed former sec. 337(a)↩ in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 631(a), 100 Stat. 2085, 2269.
3. The complete administrative file, the audit report, and petitioner's U.S. corporate income tax returns were not submitted as exhibits in this case.↩
4. The Tax Reform Act of 1986 changed the language describing the position of the United States from "unreasonable" to "not substantially justified", effective for civil tax actions or proceedings commenced after Dec. 31, 1985. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2085, 2752. However, this and other courts have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. Sokol v. Commissioner, 92 T.C. 760, 763-764 n.7 (1989); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131↩ (5th Cir. 1988), and cases cited therein.