T.C. Memo. 1996-90


UNITED STATES TAX COURT


MARY LEE SHARER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25855-91.      Filed February 29, 1996.


Roderick L. MacKenzie and Debra S. Friedman Shoop, for
petitioner.

Kathryn K. Vetter, for respondent.


MEMORANDUM OPINION

PARR, Judge:  This matter is before the Court on
petitioner's motion for an award of administrative and litigation
costs under section 7430[1] and Rule 231.  Neither party requested

    [1]  All section references are to the Internal Revenue Code
as in effect for the years in issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure, unless

a hearing, and we conclude that a hearing is not necessary to properly dispose of this motion. Rule 232(a)(3).

In our opinion issued on September 8, 1994, Sharer v. Commissioner, T.C. Memo. 1994-453, we held, among other things, that petitioner (1) was entitled to claim head of household filing status on her returns for 1986 and 1987; (2) was entitled to child care credits for 1986 and 1987; (3) did not have to include in her income one-half of the income generated from an accounting business operated by her husband during 1986 and 1987, because this income was not community income of hers under the community property laws of California; (4) had to include in her income, for 1986 and 1987, payments she received from her husband's accounting business denominated as "spousal wages", except for a portion of the 1987 payments we determined were repayments of loans petitioner had made to her husband; (5) was entitled to deduct a partnership loss for 1986, because she had substantiated her husband's basis in his partnership interest as of the end of 1986, but was not entitled to deduct a partnership loss for 1987, because she had not substantiated her husband's basis in his partnership interest as of the end of 1987; (6) was entitled to deduct all of the itemized deductions claimed on her 1986 and 1987 returns, because she had paid those deductible expenses entirely out of her separate funds; and (7) would be liable for various additions to tax for failure to file,

otherwise indicated.

negligence, and substantial understatement, for 1986 and 1987, if certain mathematical requirements were met under a Rule 155 computation. <u>Sharer v. Commissioner</u>, T.C. Memo. 1994-453. We directed that a decision in the case would be entered pursuant to Rule 155.

Respondent subsequently agreed that petitioner (1) was not liable for an addition to tax for failure to file under section 6651(a) for 1986, because her withholding tax credits exceeded the amount of tax required to be shown on her return for 1986, (2) was not liable for an addition to tax for substantial understatement for 1986, because there was no substantial understatement of her income tax for that year, and (3) was liable, in recomputed amounts, for additions to tax for negligence under section 6653(a), for 1986 and 1987, and for an addition to tax for substantial understatement under section 6661 for 1987.

## Background

Petitioner is an accountant. In 1975, she married Michael Sharer (Mr. Sharer). During their marriage, she and Mr. Sharer had one child, Derek, who was born in 1986.

Their marriage was a stormy one. From early 1986 until Mr. Sharer's death in 1988, petitioner and Mr. Sharer did not live together but maintained separate households. However, they never filed for legal separation or divorce.

Mr. Sharer was a certified public accountant. Beginning in 1980, he operated as a sole proprietorship an accounting business known as Sharer Accountancy. During 1987, petitioner helped her husband with his accounting business.

Sharer Accountancy maintained one bank account throughout 1986 and 1987, and another bank account from November 1986 through the end of 1987. Petitioner had authority to write checks on both these accounts.

Throughout 1986 and 1987, petitioner and Mr. Sharer also maintained a joint personal checking account. This account was in the name of "Michael E. Sharer or Mary Lee Sharer". Petitioner deposited her wages into the account, and Mr. Sharer deposited his draw from his accounting business into the account.

Although petitioner and Mr. Sharer were not living together, from early 1986 until about the time of Mr. Sharer's death in 1988, they represented to Mr. Sharer's accounting clients and others, including Mr. Sharer's secretary, Sandra Matsko, that they were still living together.

Petitioner received from Sharer Accountancy amounts marked "spousal wages", of $1,500 for 1986 and $25,950 for 1987. Petitioner was paid substantially all of these funds by checks that were drawn on the Sharer Accountancy accounts; each of the checks was annotated "spousal wages". She or Mr. Sharer made this notation on the checks. A $9,555 portion of the funds

petitioner received in 1987 was in repayment of loans she had made to Mr. Sharer during that year.

Petitioner failed to file timely her income tax return for 1986. Her 1986 return was filed on October 18, 1988.

By letter dated November 16, 1990, the Internal Revenue Service (IRS) informed petitioner that her 1986 and 1987 returns had been selected for examination. In the letter, an audit appointment was scheduled for December 12, 1990, and attached to the letter was an Information Document Request (IDR), requesting that petitioner provide certain information, which included bank records, documentation on her income from taxable and nontaxable sources, and returns and other tax statements concerning petitioner's investment in the partnership from which she claimed partnership loss deductions for 1986 and 1987. Petitioner did not provide the requested information to the IRS.

On January 17, 1991, the IRS sent another letter and a second IDR, this time to petitioner's attorney. The second IDR requested essentially the same information and documentation that had been sought by the first IDR. The second IDR also asked for promissory notes and records on loans that petitioner made from 1986 through 1988. Petitioner again did not provide the requested records. As a result, the IRS summonsed bank records, obtained a copy of the partnership agreement of the partnership in which petitioner claimed loss deductions for 1986 and 1987 from the Sacramento Recorder's Office, and obtained a copy of

that partnership's partnership return for 1986 from the IRS Service Center.

On August 15, 1991, respondent issued the notice of deficiency with respect to petitioner's tax liabilities for 1986 and 1987.

On November 12, 1991, petitioner filed her petition, contesting the notice of deficiency issued to her for 1986 and 1987. On January 9, 1992, respondent filed an answer.

In a letter dated November 15, 1992, to her attorney, petitioner stated as follows:

> Mr. Sharer and I carried on a pretense of marriage in order to protect his business and to promote an image of stability. Even his secretary [Sandra Matsko] didn't know the truth. Mr. Sharer was always telling her various stories, as he did to other clients and associates. Mr. Sharer told other people what he thought they wanted to hear. One minute I was okay, the next minute I was a witch and responsible for all his problems. I think he wanted people to feel sorry for him or to be "on his side" as his secretary was. To this day I still (along with other clients) don't understand that relationship. He was always going to fire her but could never quite do it. If Mr. Sharer and I were meeting clients, we always met at the restaurant or office. No one ever came to my house except for birthdays and holidays, at which people would expect to see Derek's father and he would appear for those occasions.

A copy of this letter was furnished to the IRS on November 30, 1992.

Shortly before trial, petitioner provided respondent with copies of partnership returns for 1980 through 1985 to support

her claim that she was entitled to partnership loss deductions for 1986 and 1987.

Discussion

A taxpayer who substantially prevails in an administrative or court proceeding may be awarded a judgment for reasonable administrative or litigation costs incurred in such proceedings. Sec. 7430(a)(1) and (2). A judgment of administrative or litigation costs may be awarded under section 7430 if a taxpayer (1) was the "prevailing party", (2) exhausted the administrative remedies available to the taxpayer within the IRS, and (3) did not unreasonably protract the proceedings. Sec. 7430(a), (b)(1), (b)(4). A taxpayer must satisfy each of these three requirements to be entitled to a judgment under section 7430. Respondent concedes that petitioner exhausted the administrative remedies available to her within the IRS. We are left to decide (1) whether petitioner was the "prevailing party", (2) whether petitioner did not unreasonably protract the proceedings, and (3) whether the amounts petitioner claims as administrative and litigation costs are reasonable.

To qualify as the "prevailing party", the taxpayer must establish that (1) the position of the United States in the proceeding was not substantially justified, (2) the taxpayer substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented, and (3) the taxpayer satisfies the applicable net worth requirements. Sec. 7430(c)(4)(A). Respondent concedes that petitioner substantially prevailed with respect to the

amount in controversy and meets the applicable net worth requirements.  Respondent argues, however, that the position taken in both the administrative and court proceedings was substantially justified.  Rule 232(e); <u>Dixson Corp. v. Commissioner</u>, 94 T.C. 708, 714-715 (1990); <u>Gantner v. Commissioner</u>, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).  Accordingly, the Court must decide whether the position of the United States in the administrative and court proceedings was not substantially justified.

In deciding this issue, we must first identify the point in time at which the United States is considered to have taken a position and then decide whether the position taken from that point forward was substantially justified.  The "not substantially justified" standard is applied as of the separate dates that respondent took a position in the administrative proceeding as distinguished from the proceeding in this Court.  Sec. 7430(c)(7)(A) and (B); <u>Han v. Commissioner</u>, T.C. Memo. 1993-386.  For purposes of the administrative proceeding, respondent took a position on August 15, 1991, the date upon which the notice of deficiency for 1986 and 1987 was issued to petitioner.  Sec. 7430(c)(7)(B).  For purposes of the proceeding in this Court, respondent took a position on January 9, 1992, the date upon which respondent filed the answer in this case.  See <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), affg.

in part, revg. in part on other grounds, and remanding T.C. Memo. 1991-144.

Whether respondent's position was not substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case. Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). A position is substantially justified if the position is "justified to the degree that could satisfy a reasonable person." Pierce v. Underwood, supra at 565; Powers v. Commissioner, 100 T.C. 457, 470-471 (1993). A position that merely possesses enough merit to avoid sanctions for frivolousness will not satisfy this standard; rather, the position must have a "reasonable basis both in law and fact". Pierce v. Underwood, supra at 564-565.

The Court must "consider the basis for respondent's legal position and the manner in which the position was maintained". Wasie v. Commissioner, 86 T.C. 962, 969 (1986). The fact that respondent eventually loses or concedes the case does not establish an unreasonable position. Sokol v. Commissioner, 92 T.C. 760, 767 (1989); Baker v. Commissioner, 83 T.C. 822, 828 (1984), vacated on other issues 787 F.2d 637 (D.C. Cir. 1986). An evaluation of the reasonableness of respondent's position and conduct necessarily requires considering what respondent knew at

the time. Cf. <u>Rutana v. Commissioner</u>, 88 T.C. 1329, 1334 (1987); <u>DeVenney v. Commissioner</u>, 85 T.C. 927, 930 (1985).

Generally, when respondent presents evidence which, if credited by the Court, is sufficient to support a decision in respondent's favor, there will be a reasonable basis for respondent's position. See <u>Wilfong v. United States</u>, 991 F.2d 359, 369 (7th Cir. 1993).

The taxpayer has the burden of establishing that respondent's position was unreasonable. Rule 232(e).

A. <u>Head of Household Filing Status, Child Care Credits, and Inclusion in Petitioner's Income of One-Half of Sharer Accountancy's Income</u>

Petitioner's entitlement to claim head of household filing status and child care credits turned on whether she and her husband, in fact, maintained separate households during 1986 and 1987. Similarly, whether petitioner had to include one-half of the income from Sharer Accountancy in her income for 1986 and 1987, turned on whether she and her husband were living "separate and apart". Under the community property laws of California, income earned by Mr. Sharer during 1986 and 1987, while he and petitioner were married, generally would be community income of Mr. Sharer and petitioner. However, if Mr. Sharer and petitioner were living separate and apart, with no intention of resuming marital relations, Mr. Sharer's earnings would be his separate property, rather than community income. See discussion in <u>Sharer v. Commissioner</u>, T.C. Memo. 1994-453.

Although we determined that petitioner and Mr. Sharer maintained separate households and were living separate and apart, respondent's position at all relevant times, including the date the notice of deficiency was issued and the date the answer was filed, was substantially justified. Respondent's position was reasonable and supported by substantial evidence. During 1986 and 1987, petitioner and Mr. Sharer continued to maintain a joint checking account into which petitioner deposited her wages and Mr. Sharer his draw from Sharer Accountancy. At trial, respondent offered testimony from Mr. Sharer's secretary, Sandra Matsko, that indicated petitioner and Mr. Sharer were still living together. Our holding in petitioner's favor, notwithstanding this evidence to the contrary, resulted in large part from our crediting petitioner's testimony concerning her and Mr. Sharer's marital relationship. As the Court of Appeals for the Seventh Circuit explained, "when resolution of a case hinges to such an extent on determinations of witness credibility, it is an abuse of discretion to find that the government's position was not substantially justified." Wilfong v. United States, supra at 368.

B. Funds Petitioner Received as Loan Repayments

We determined that $9,555 of the $25,950 petitioner received from Sharer Accountancy in 1987 was not taxable income of petitioner's because the $9,555 was in repayment of loans petitioner had previously made to Mr. Sharer. At trial,

petitioner did not offer any documentary evidence supporting her contention that this $9,555 she received from Sharer Accountancy in 1987 was in repayment of loans. Our holding in her favor resulted from our crediting her testimony that this money represented loan repayments.

However, respondent's position on this issue was substantially justified. During 1987, petitioner, who was an accountant, helped Mr. Sharer with Sharer Accountancy's accounting business. Substantially all of the funds that we ultimately held to be loan repayments were paid to petitioner by checks drawn on Sharer Accountancy's accounts that were annotated "spousal wages". As of the time the notice of deficiency was issued, as of the time respondent's answer was filed, and at all other pertinent times, a reasonable basis existed for respondent's position. See Wilfong v. United States, supra at 368-369.

C. Partnership Loss Deduction for 1986

We determined that petitioner had substantiated her husband's adjusted basis in his partnership interest as of the end of 1986 so as to be entitled to deduct a partnership loss for 1986. However, we think that respondent's position was substantially justified. Petitioner provided respondent with copies of the partnership's returns for 1980 through 1985, helping to substantiate the adjusted basis of the partnership interest as of the end of 1986, only shortly before trial. As of

the time the notice of deficiency was issued and respondent's answer was filed, and thereafter, a reasonable basis existed for respondent's position that Mr. Sharer's basis in the partnership had not been adequately substantiated. See Balken v. Commissioner, T.C. Memo. 1994-499, affd. 72 F.3d 133 (8th Cir. 1995).

D. Itemized Deductions Claimed on 1986 and 1987 Returns

We determined that petitioner was entitled to deduct all of the itemized deductions claimed on her 1986 and 1987 returns, because the expenses had been paid out of her separate property, and not out of community funds. Our holding in petitioner's favor turned on whether she and Mr. Sharer were living "separate and apart". As indicated above and in our opinion in Sharer v. Commissioner, T.C. Memo. 1994-453, under the community property laws of California, income earned by a spouse during marriage is community income. However, earnings and accumulations of a spouse, while living separate and apart from the other spouse, are the separate property of that spouse.

Respondent's position on this issue was substantially justified. As discussed above, there was substantial evidence supporting respondent's position. Our finding that petitioner and Mr. Sharer were living separate and apart was based in large part on our crediting petitioner's testimony about their marital relationship.

E. Additions to Tax

Pursuant to our direction that a decision in this case would be entered pursuant to Rule 155, respondent subsequently agreed that petitioner (1) was not liable for an addition to tax for failure to file under section 6651(a) for 1986, because her withholding tax credits exceeded the tax required to be shown on her return, (2) was not liable for an addition to tax for substantial understatement under section 6661 for 1987, because there was no substantial understatement of her tax for that year, and (3) was liable, in recomputed amounts, for additions to tax for negligence under section 6653(a), for 1986 and 1987.

Petitioner failed to timely file her 1986 return. As a result, in our opinion in Sharer v. Commissioner, supra, we originally determined that she would be liable for an addition to tax under section 6651(a) for 1986. We further originally determined that petitioner would be liable for additions to tax for (1) negligence under section 6653(a), for 1986 and 1987, and (2) substantial understatement under section 6661, for 1986 and 1987, if the Rule 155 computation reflected that she had substantially understated her tax for those years.

Respondent's position on these issues was substantially justified. As discussed above, respondent's position on a number of other issues which we decided in petitioner's favor was reasonable and substantially justified. If these other issues had been decided in respondent's favor, then the withholding credits would not have exceeded the tax required to be shown on

her return and she would have been liable for an addition to tax for failure to file under section 6651(a) for 1986. Similarly, if these issues had been decided in respondent's favor, petitioner then would have substantially understated her tax and would have been liable for an addition to tax under section 6661 for 1986. Finally, if these issues had been decided in respondent's favor, then petitioner's liability for additions to tax for negligence under section 6653(a) for 1986 and 1987, and for substantial understatement under section 6661 for 1987, would have been increased.

## F. Conclusion

As we have decided that respondent's position in both the administrative and Court proceedings for the years in issue was substantially justified, we need not decide (1) whether petitioner unreasonably protracted the proceedings, and (2) whether the administrative and litigation costs petitioner claims are reasonable. Petitioner's motion, therefore, will be denied.

An appropriate order and decision will be entered.