T.C. Memo. 1997-183

UNITED STATES TAX COURT

ROGER L. AND PATRICIA A. LAVALLEE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1604-95.                    Filed April 21, 1997.

Roger L. and Patricia A. Lavallee, pro sese.

James F. Kearney, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Petitioners are seeking an award of reasonable
administrative costs pursuant to section 7430(f)(2)[1] and Rules
270-274.[2]

_____

[1]Sec. 7430(f)(2) provides that "A decision granting or
denying (in whole or in part) an award for reasonable
administrative costs under subsection (a) by the Internal Revenue
Service shall be subject to appeal to the Tax Court under rules
similar to the rules under section 7463 (without regard to the
amount in dispute)."

[2]The petition for administrative costs in this case was
                                        (continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Jacksonville, Florida, when they filed their petition for administrative costs. During the years 1985, 1986, and 1987, Mr. Lavallee was employed as a cross-country truck driver for Paul Arpin Van Lines, Inc. (Paul Arpin), in East Greenwich, Rhode Island.

Petitioners filed untimely Federal income tax returns for 1985 and 1986 on July 23, 1987, and for 1987 on November 23, 1988. Mr. and Mrs. Lavallee listed their occupations as "truck driver" and "homemaker" on their returns for these years. On Schedule C of their returns, petitioners reported the following amounts of gross receipts and deductions:

| Year | Gross receipts | Deductions |
|------|---------------|------------|
| 1985 | $100,232 | $80,883 |
| 1986 | 102,288 | 87,797 |
| 1987 | 98,582 | 90,188 |

On October 13, 1988, respondent's Office Auditor Linda Barrow was assigned to examine petitioners' 1986 Federal income tax return. On October 20, 1988, Office Auditor Barrow sent

_____

[2](...continued)
filed on Jan. 26, 1995, and, therefore, has been considered under sec. 7430 as amended by sec. 6239(a) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3743-3744, effective for all civil tax proceedings commenced after Nov. 10, 1988. All Rule references are to the Tax Court Rules of Practice and Procedure.

petitioners an initial appointment letter, which proposed a conference date of November 15, 1988. Petitioners failed to contact respondent and did not appear at the scheduled conference. On December 8, 1988, a second appointment letter was sent to petitioners requesting that they call for a convenient appointment.

Petitioners met with Office Auditor Barrow on December 22, 1988. At that time, petitioners provided information regarding Mr. Lavallee's employment at Paul Arpin and his compensation and expenses in connection therewith. On December 23, 1988, respondent sent a Letter 1995(DO) to Paul Arpin, requesting employment-related information with respect to Mr. Lavallee. Office Auditor Barrow also sent petitioners three Information Document Requests (Form 4564), which were dated December 22, 1988, December 23, 1988, and January 9, 1989. The documents provided on December 22, 1988, were the only documents that petitioners provided to respondent prior to respondent's issuance of the notice of deficiency.

On January 17, 1989, Office Auditor Barrow was assigned petitioners' 1987 Federal income tax return, which had also been selected for audit.[3]

---

[3]Office Auditor Barrow had requested information with respect to petitioners' 1987 year in the initial appointment letter she sent petitioners on Oct. 20, 1988, and in the Forms 4564 that she issued to petitioners on Dec. 23, 1988, and Jan. 9, 1989.

On February 24, 1989, petitioners' 1985 return was assigned to Office Auditor Barrow.  On that date, Office Auditor Barrow sent petitioners a Form 4564 with respect to their 1985 return. A second Form 4564 was sent to petitioners on April 4, 1989.

Respondent sent Reports of Individual Income Tax Examination Changes (Form 4549) to petitioners, which reflected proposed adjustments.[4]  The proposed adjustments to petitioners' Schedule C deductions for 1985, 1986, and 1987 were in the amounts of $2,930, $10,379, and $15,363, respectively.[5]

In a letter dated May 19, 1989, respondent requested that petitioners respond to the Forms 4549 that had been sent to them and informed petitioners that they could have their case transferred to respondent's Appeals Office.  The letter also stated that respondent would issue a notice of deficiency if petitioners failed to respond within 15 days.

Petitioners, through their daughter-in-law, requested that their case be sent to Appeals.  On July 21, 1989, petitioners' case was transferred to respondent's Appeals Office in Jacksonville, Florida.  On July 25, 1989, Appeals Officer Sandra G. Holder sent petitioners a letter advising them that the case had been referred to her and that she would call or write to

----

[4]Respondent's Forms 4549 for petitioners' 1986 and 1987 years are both dated Jan. 18, 1989; her report for petitioners' 1985 year is dated May 1, 1989.

[5]A listing of each of Office Auditor Barrow's adjustments for 1985, 1986, and 1987 is contained in the appendix.

arrange a mutually satisfactory conference date. In a letter dated September 19, 1989, Appeals Officer Holder wrote petitioners to inform them that she had scheduled a conference for October 11, 1989, with respect to their 1985, 1986, and 1987 tax years. After petitioners failed to respond to this letter, Appeals Officer Holder wrote to petitioners on October 12, 1989, scheduling another conference date for October 24, 1989. On October 20, 1989, Mrs. Lavallee contacted the office of Appeals Officer Holder to advise her that petitioners would be out of town for 3 to 4 weeks. On March 20, 1990, after petitioners had failed to contact respondent requesting another conference date, respondent issued a notice of deficiency. In the notice, respondent determined the following deficiencies and additions to tax:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| 1985 | $868 | $317 | $244 | 50 percent of the interest due on $868 |

| | | Additions To Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
| 1986 | $3,038 | $665 | $296 | 50 percent of the interest due on $3,038 |
| 1987 | 4,104 | 843 | 261 | 50 percent of the interest due on $4,104 |

Petitioners failed to file a petition with this Court with respect to the notice of deficiency.

After respondent instituted collection procedures with respect to these deficiencies, petitioners retained Steven W. Conner, a certified public accountant in Orange Park, Florida. In January 1991, Mr. Conner filed amended Federal income tax returns for petitioners for 1985, 1986, and 1987.[6] In Part II (Explanation of Changes to Income, Deductions, and Credits) of each amended return, Mr. Conner included the following statement:

> Taxpayers' originally filed return was audited and changes requiring payment of additional tax were made. The taxpayer [sic] was not able to contact the revenue officer before the case was closed to contest the changes. The taxpayers are long haul truckers. The changes on this amended return convert the audited numbers back to the return as filed. The taxpayer believes the return was correct as filed. * * *

In a letter dated March 25, 1991, respondent indicated that the claims in petitioners' amended returns would not be considered unless petitioners first paid the tax and then filed a claim for refund.

On October 31, 1991, respondent received an Offer in Compromise (Form 656), prepared by Mr. Conner, with reference to petitioners' 1985, 1986, and 1987 Federal income tax liabilities. In an October 21, 1991, letter accompanying the Form 656, Mr. Conner explained that petitioners made the offer "because of

---

[6]The amended returns for 1986 and 1987 were filed on Jan. 3, 1991, and the amended return for 1985 was filed on Jan. 14, 1991.

doubt as to any liability".  The Form 656 proposed a reduction in petitioners' Federal income tax deficiencies for 1985, 1986, and 1987 in the amounts of $870, $2,987, and $4,104, respectively.[7]

Revenue Agent Kim Lovell was assigned to review petitioners' Form 656.  In a telephone conference on May 7, 1992, Revenue Agent Lovell informed Mr. Conner that petitioners needed to present additional information if their case was to be closed.

On May 11, 1992, Revenue Agent Lovell and Mr. Conner met to review additional documentation and to determine the extent of any adjustments to petitioners' Federal income tax liabilities for 1985, 1986, or 1987.  In a Form 4549, which was proposed by Revenue Agent Lovell and dated July 29, 1992, she determined that petitioners were entitled to additional Schedule C deductions for 1985 and 1987 in the amounts of $430 and $621, respectively.[8] This resulted in a reduction of petitioners' Federal income taxes for 1985, 1986, and 1987 in the amounts of $123, $2,[9] and $166, respectively.  Revenue Agent Lovell prepared a rejection

---

[7]These amounts were the same as the reductions in Federal income tax liability listed by petitioners on their amended returns.

[8]Revenue Agent Lovell increased petitioners' Schedule C deduction in 1985 by $430 to reflect petitioners' payment of a highway use tax.  For 1987, Revenue Agent Lovell increased petitioners' Schedule C deductions for car/truck expenses, travel and entertainment expenses, and uniforms in the amounts of $127, $56, and $438, respectively.

[9]This $2 reduction in petitioners' Federal income tax liability for 1986 resulted from respondent's determination that petitioners were entitled to use income averaging in computing their tax liability for that year.

memorandum on July 29, 1992, with respect to petitioners' Form 656.

In a letter dated November 23, 1992, Mr. Conner informed respondent of petitioners' disagreement with the rejection of their Form 656 and the limited extent of Revenue Agent Lovell's proposed adjustments. Mr. Conner's letter included eight attachments which provided substantiation for several of the deductions discussed therein. With the exception of three documents, petitioners had not previously provided this information to respondent during her examination of their returns.

In his letter, Mr. Conner proposed the following adjustments to petitioners' Schedule C deductions:

### 1985

| Adjustment | Per Office Auditor Barrow | Per Appeal | |
|---|---|---|---|
| Depreciation | $11,831 | $11,957 | ($126) |
| Repairs | 10,275 | 10,275 | 0 |
| Travel & entertainment | 4,676 | 8,218 | (3,542) |
| Claims/chargebacks | 697 | 697 | 0 |
| Interest on truck loans | 0 | 5,473 | (5,473) |
| All other expenses | 50,474 | 50,474 | 0 |
| Total | $77,953 | $87,094 | ($9,141) |

### 1986

|  | Per Office Auditor Barrow | Per Appeal | Adjustment |
|---|---|---|---|
| Depreciation | $12,499 | $12,625 | ($126) |
| Repairs | 9,753 | 14,206 | (4,453) |
| Travel & entertainment | 8,891 | 8,891 | 0 |
| Claims/chargebacks | 413 | 413 | 0 |
| Interest on truck loans | 0 | 5,473 | (5,473) |
| All other expenses | 45,862 | 45,862 | 0 |
| Total | $77,418 | $87,470 | ($10,052) |

### 1987

|  | Per Office Auditor Barrow | Per Appeal | Adjustment |
|---|---|---|---|
| Depreciation | $25,904 | $37,864 | ($11,960) |
| Repairs | 5,399 | 8,579 | (3,180) |
| Travel & entertainment | 2,519 | 7,100 | (4,581) |
| Claims/chargebacks | 737 | 767 | (30) |
| Interest on truck loans | 0 | 4,685 | (4,685) |
| All other expenses | 40,266 | 40,266 | 0 |
| Total | $74,825 | $99,261 | ($24,436) |

Thus, petitioners were now claiming Schedule C deductions for 1985 and 1987 in excess of the amounts reported on their returns for those years, as well as a smaller deduction for 1986:

| Year | Amount per return | Amount per appeal |
|---|---|---|
| 1985 | $80,883 | $87,094 |
| 1986 | 87,797 | 87,470 |
| 1987 | 90,188 | 99,261 |

On or about May 24, 1993, petitioners' case was reassigned to Revenue Agent Michael L. Roberts who determined that Mr.

Conner's November 23, 1992, letter raised additional issues and provided additional information.  In his examination workpapers, Revenue Agent Roberts stated that petitioners had adequately substantiated the amounts of their Schedule C deductions as listed in Mr. Conner's letter.  However, Revenue Agent Roberts also concluded that he lacked the authority to allow petitioners to claim Schedule C deductions in excess of the greater of the amounts originally reported on the returns for those years or the amounts allowed by Office Auditor Barrow during her examination of petitioners' returns.[10]  Revenue Agent Roberts then transferred petitioners' case to respondent's Appeals Office for a determination as to the total amount of Schedule C deductions which petitioners were entitled to claim.

In a letter dated May 17, 1994, Appeals Officer Robert W. Whittle advised Mr. Conner that he had scheduled a conference for June 29, 1994, in Jacksonville, Florida.  However, after reviewing the workpapers of Revenue Agent Roberts, Appeals Officer Whittle contacted Mr. Conner to advise him that a meeting was unnecessary, as Appeals Officer Whittle was prepared to allow the amounts of Schedule C deductions originally reported on petitioners' Federal income tax returns for 1985, 1986, and 1987.

Mr. Conner indicated that he still preferred to meet on the

---

[10]In several instances, Office Auditor Barrow allowed petitioners a deduction that was in excess of the amount claimed on their return.  See appendix.

scheduled date, and during his meeting with Appeals Officer Whittle on June 29, 1994, Mr. Conner explained that petitioners were claiming additional amounts of Schedule C deductions. Appeals Officer Whittle originally believed that the period of limitations was no longer open for 1985 and 1987.[11] Nevertheless, despite finding that petitioners had a "weak case", Appeals Officer Whittle ultimately agreed with Mr. Conner that petitioners should be considered to have made an informal claim for refund for which the period of limitations had not run and that petitioners' claimed Schedule C deductions should be allowed.

Petitioners then filed a claim with respondent to recover the administrative costs incurred in connection with their case. In a letter dated December 14, 1994, respondent denied petitioners' claim for such costs. On January 26, 1995, petitioners filed with the Court a petition for administrative costs pursuant to section 7430(f)(2). The petition stated that respondent had denied petitioners' claim for $9,311.12 of administrative costs. The petition also stated that petitioners were now claiming $13,586.12 of administrative costs.

---

[11]Since petitioners' 1986 year involved only a negligible deficiency under the terms of the settlement agreement, the parties did not discuss whether the period of limitations remained open with respect to that year.

OPINION

Section 7430(a)(1) provides that a party that has prevailed in any administrative proceeding against the United States may recover reasonable administrative costs. Section 7430(c)(2) limits the term "reasonable administrative costs" to include only costs incurred on or after the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency. <u>Estate of Gillespie v. Commissioner</u>, 103 T.C. 395, 396 (1994).

To obtain an award of administrative costs, taxpayers must establish that: (1) They have "substantially prevailed" in the controversy; (2) they satisfy certain net worth requirements; (3) the position of the United States in the proceeding was not substantially justified; (4) they have not unreasonably protracted the proceedings; and (5) the amount of the costs sought is reasonable. Sec. 7430(b) and (c). Petitioners must prove that they satisfy each of these requirements. Rule 232(e); <u>Gantner v. Commissioner</u>, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).[12] The parties have stipulated that

_____

[12]In the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 701(b), 110 Stat. 1452, 1463 (1996), sec. 7430(c)(4) was amended to require the Government to establish that its position was substantially justified. This amendment is effective for

(continued...)

petitioners satisfy the net worth requirements.  Respondent also concedes that petitioners substantially prevailed with respect to the amounts in controversy.

Whether the Position of the United States was Substantially Justified

Petitioners must prove that the position of the United States in this administrative proceeding was not substantially justified.  Sec. 7430(c)(4)(A)(i); Rule 232(e).  We apply the "not substantially justified" standard as of the date that respondent takes her position in the case.  For purposes of an administrative proceeding, respondent generally takes her position on the date she issues the notice of deficiency.  Sec. 7430(c)(7)(B); Han v. Commissioner, T.C. Memo. 1993-386.

Whether respondent's position was "not substantially justified" turns on an analysis of all the facts and circumstances, as well as any relevant legal precedents.  Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988); see also H. Rept. 97-404, at 12 (1981). We must consider the basis for respondent's position and the manner in which that position was maintained.  Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986).  A position is substantially justified if the position is "justified to a degree

---

12(...continued)
proceedings commenced after July 30, 1996.

that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988); Powers v. Commissioner, 100 T.C. 457, 470-471 (1993). The fact that respondent loses or concedes a case, without more, does not establish an unreasonable position. Sokol v. Commissioner, 92 T.C. 760, 767 (1989). Rather, the reasonableness of respondent's position is determined by considering the information available to her at the time the notice of deficiency was issued. Sharer v. Commissioner, T.C. Memo. 1996-90; see also Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987).

The adjustments made by Office Auditor Barrow during her exmaination of petitioners' Federal income tax returns for 1985, 1986, and 1987 formed the basis of respondent's notice of deficiency in this case. However, neither petitioners' testimony at trial nor their post-trial brief clearly identified the particular adjustments that petitioners contend were not substantially justified. For instance, the only adjustments which Mr. Lavallee made specific reference to in his testimony were Officer Auditor Barrow's purported adjustments for trip sheets and oil. However, Office Auditor Barrow's examination workpapers do not discuss an adjustment for trip sheets. While the adjustments for oil may have been contained within the nominal adjustments of petitioners' Schedule C deductions for car/truck expenses, the amounts allowed by Office Auditor Barrow were determined on the basis of the substantiation provided by

Mr. Lavallee himself. In addition, Mr. Conner never disputed these adjustments during his discussions with respondent.

Deductions from gross income are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to the deductions they claim. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Taxpayers are required to maintain records sufficient to establish the amounts of their deductions. Sec. 6001.

Following our review of the record, we conclude that petitioners have not proven that respondent's position was not substantially justified. Rule 232(e). We have reviewed Office Auditor Barrow's workpapers and find her adjustments to be justified given the information available. In addition, we note that respondent provided petitioners with Forms 4549 for 1985, 1986, and 1987, which contained the proposed adjustments made by Office Auditor Barrow. Respondent requested that petitioners respond to the proposed adjustments, and she informed petitioners that they could have their case reviewed by respondent's Appeals Office. Moreover, after petitioners' daughter-in-law advised respondent that petitioners wanted their case sent to Appeals, Appeals Officer Holder attempted to schedule two Appeals conferences with them. Petitioners did not attend either conference, nor did they ever attempt to arrange another meeting

date. Thus, petitioners had several opportunities to meet with respondent in order to discuss respondent's proposed adjustments, as well as to present any additional documentation that they had. They simply failed to take advantage of the opportunities respondent afforded them.[13]

For the foregoing reasons, we hold that petitioners are not entitled to an award of reasonable administrative costs. As a result of our disposition, we express no opinion as to whether any of the remaining requirements of section 7430 have been satisfied.[14]

Decision will be entered that petitioners are not entitled to administrative costs.

---

[13]Mr. Conner's letter and most of the documents provided therein were not submitted until Nov. 23, 1992, more than 2-1/2 years after the notice of deficiency had been issued. Mr. Conner's letter also proposed Schedule C deductions for 1985 and 1987 that were in excess of the amounts petitioners had reported on their returns for those years.

[14]Respondent also argues that petitioners are seeking costs incurred in connection with a "collection action", which respondent maintains does not constitute an "administrative proceeding" under sec. 7430(c)(5) and sec. 301.7430-3(a)(4), Proced. & Admin. Regs. Since we have found that petitioners have failed to prove that the position of the United States was not substantially justified, we leave the resolution of this question for another day. See Ball v. Commissioner, T.C. Memo. 1995-520 (also declining to reach this issue).

## Appendix

### 1985

| | Per Return | As Corrected | Adjustment |
|---|---|---|---|
| 1. Bank charges | -- | -- | -- |
| 2. Car/truck expenses | $16,751 | $16,281 | $470 |
| 3. Depreciation | 17,119 | 11,831 | 5,288 |
| 4. Dues and publications | -- | -- | -- |
| 5. Insurance | 3,634 | 3,634 | 0 |
| 6. Office expense | 321 | 506 | (185) |
| 7. Mortgage interest | -- | -- | -- |
| 8. Other interest | 5,473 | 5,473 | 0 |
| 9. Laundry & cleaning | -- | -- | -- |
| 10. Rent on business property | 280 | 324 | (44) |
| 11. Repairs | 7,882 | 10,275 | (2,393) |
| 12. Supplies | 412 | 377 | 35 |
| 13. Taxes | 1,530 | 1,100 | 430 |
| 14. Travel & entertainment | 1,148 | 4,676 | (3,528) |
| 15. Utility/telephone | 533 | 110 | 423 |
| 16. Tolls | 462 | 479 | (17) |
| 17. Pick up charges | 1,570 | 1,495 | 75 |
| 18. Claims/chargebacks | 863 | 697 | 166 |
| 19. Wire charges | 648 | 648 | 0 |
| 20. Miscellaneous | 587 | 100 | 487 |
| 21. Service charges | 2,108 | 2,108 | 0 |
| 22. Permits | 1,999 | 1,509 | 490 |
| 23. Weights | 802 | 47 | 755 |
| 24. Handling costs | 16,257 | 15,962 | 295 |
| 25. Tools | 337 | 154 | 183 |
| 26. Line haul adjustment | 167 | 167 | 0 |
| 27. Uniforms | -- | -- | -- |
| 28. Postage & Federal Express | -- | -- | -- |
| 29. Casual labor | -- | -- | -- |
| TOTAL | $80,883 | $77,953 | $2,930 |

### 1986

| | Per Return | As Corrected | Adjustment |
|---|---|---|---|
| 1. Bank charges | -- | -- | -- |
| 2. Car/truck expenses | $13,655 | $13,360 | $295 |
| 3. Depreciation | 15,730 | 12,499 | 3,231 |
| 4. Dues and publication | -- | - | -- |
| 5. Insurance | 3,641 | 3,641 | 0 |
| 6. Office expense | 571 | 255 | 316 |
| 7. Mortgage interest | -- | -- | -- |
| 8. Other interest | 5,499 | 5,499 | 0 |
| 9. Laundry & cleaning | 400 | 400 | 0 |
| 10. Rent on business property | 420 | 324 | 96 |
| 11. Repairs | 13,833 | 9,753 | 4,080 |

| | Per Return | As Corrected | Adjustment |
|---|---:|---:|---:|
| 12. Supplies | 463 | 753 | (290) |
| 13. Taxes | 871 | 871 | 0 |
| 14. Travel & entertainment | 10,541 | 8,891 | 1,650 |
| 15. Utility/telephone | 533 | 465 | 68 |
| 16. Tolls | 620 | 499 | 121 |
| 17. Pick up charges | 963 | 1,106 | (143) |
| 18. Claims/chargebacks | 647 | 413 | 234 |
| 19. Wire charges | 579 | 673 | (94) |
| 20. Miscellaneous | 330 | 137 | 193 |
| 21. Service charges | 1,590 | 1,851 | (261) |
| 22. Permits | 2,165 | 3,069 | (904) |
| 23. Weights | 820 | 774 | 46 |
| 24. Handling costs | 13,926 | 12,185 | 1,741 |
| 25. Tools | -- | -- | -- |
| 26. Line haul adjustment | -- | -- | -- |
| 27. Uniforms | -- | -- | -- |
| 28. Postage & Federal Express | -- | -- | -- |
| 29. Casual labor | -- | -- | -- |
| TOTAL | $87,797 | $77,418 | $10,379 |

1987

| | Per Return | As Corrected | Adjustment |
|---|---:|---:|---:|
| 1. Bank charges | $884 | $36 | $848 |
| 2. Car/truck expenses | 14,596 | 14,469 | 127 |
| 3. Depreciation | 25,904 | 25,904 | 0 |
| 4. Dues and publications | 48 | 0 | 48 |
| 5. Insurance | 6,401 | 4,249 | 2,152 |
| 6. Office expense | -- | -- | -- |
| 7. Mortgage interest | 1,026 | 324 | 702 |
| 8. Other interest | 5,593 | 985 | 4,608 |
| 9. Laundry & cleaning | 922 | 200 | 722 |
| 10. Rent on business property | -- | -- | -- |
| 11. Repairs | 8,572 | 5,399 | 3,173 |
| 12. Supplies | -- | -- | -- |
| 13. Taxes | 465 | 771 | (306) |
| 14. Travel & entertainment | 1,089 | 2,519 | (1,430) |
| 15. Utility/telephone | 369 | 157 | 212 |
| 16. Tolls | 653 | 668 | (15) |
| 17. Pick up charges | 2,211 | 2,155 | 56 |
| 18. Claims/chargebacks | 1,896 | 737 | 1,159 |
| 19. Wire charges | 609 | 609 | 0 |
| 20. Miscellaneous | -- | -- | -- |
| 21. Service charges | -- | -- | -- |
| 22. Permits | 2,815 | 2,234 | 581 |
| 23. Weights | 990 | 25 | 965 |
| 24. Handling costs | -- | -- | -- |
| 25. Tools | -- | -- | -- |
| 26. Line haul adjustment | -- | -- | -- |
| 27. Uniforms | 779 | 193 | 586 |
| 28. Postage & Federal Express | 816 | 564 | 252 |
| 29. Casual labor | 13,550 | 12,627 | 923 |
| TOTAL | $90,188 | $74,825 | $15,363 |