T.C. Memo. 2002-58


UNITED STATES TAX COURT


TERRELL EQUIPMENT COMPANY, INC., ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 13059-98, 13060-98,    Filed February 27, 2002.
          13112-98.


William A. Roberts and Kyle Coleman (specially recognized),

for petitioners Vernon W. Griffin and Terrell Equipment Co., Inc.

    Stephen C. Coen, for petitioner Janet M. Griffin.[2]

    Audrey M. Morris, for respondent.

---

    [1] Cases of the following petitioners are consolidated
herewith:  Vernon W. Griffin, docket No. 13060-98; Janet M.
Griffin, docket No. 13112-98.

    [2] Petitioner Janet M. Griffin was represented by Stephen C.
Coen at trial and for the opening brief; however, Mr. Coen
withdrew as counsel after the initial brief, but before the reply
brief, was submitted.

MEMORANDUM FINDINGS OF FACT AND OPINION


VASQUEZ, Judge:  Respondent determined the following deficiencies in, additions to, and penalties on petitioners' Federal income taxes:

Petitioner Terrell Equipment Co., Inc.:

| Tax Year Ended | Deficiency | Additions to Tax | | | Penalty |
| | | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6653 (b)(1) | Sec. 6663 |
| --- | --- | --- | --- | --- | --- |
| 9/30/87 | $162,029 | $121,522 | [1] | --- | --- |
| 9/30/88 | 65,423 | --- | --- | $49,067 | --- |
| 9/30/89 | 84,891 | --- | --- | --- | $63,668 |

[1]  50 percent of the statutory interest on $162,029

Petitioners Vernon W. Griffin and Janet M. Griffin:

| Year | Deficiency | Additions to Tax | | | Penalty |
| | | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6653 (b)(1) | Sec. 6663 |
| --- | --- | --- | --- | --- | --- |
| 1987 | $56,169 | $42,127 | [1] | --- | --- |
| 1988 | 50,696 | --- | --- | $38,022 | --- |
| 1989 | 33,994 | --- | --- | --- | $25,496 |

[1]  50 percent of the statutory interest on $56,169

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issue for decision is whether petitioners are liable for the additions to tax and penalties for fraud.[3]  If we

---

[3]  Sec. 6653(b)(1), the successor to sec. 6653(b)(1)(A) and
(continued...)

find that they are liable for the additions to tax and penalties for fraud, then we must decide issues regarding petitioner Terrell Equipment Co., Inc.'s (TECO), liability for deficiencies for its taxable years ended September 30, 1987 (TY 1987), September 30, 1988 (TY 1988), September 30, 1989 (TY 1989), and petitioners Vernon W. Griffin (Vernon) and Janet M. Griffin's (Janet) liability for deficiencies for 1987, 1988, and 1989.[4]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this

---

[3](...continued)
(B), is applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1015(b)(2)(B), (b)(4), 102 Stat. 3342, 3569. Sec. 6663, the successor to sec. 6653(b)(1), is applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(a), (c), (d), 103 Stat. 2106, 2395-2400.

Sec. 6072(b) provides that a return of a corporation made on the basis of a fiscal year shall be filed on or before the 15th day of the third month following the close of the fiscal year. TECO's 1988 and 1989 fiscal years ended on Sept. 30, 1988, and Sept. 30, 1989, respectively.

Accordingly, TECO's 1988 and 1989 fiscal year returns were due on Dec. 15, 1988, and Dec. 15, 1989, respectively. Therefore, in TECO's notice of deficiency, respondent mistakenly referenced sec. 6653(b)(1) instead of sec. 6653(b)(1)(A) for TECO's 1988 fiscal year and sec. 6663 instead of sec. 6653(b)(1) for TECO's 1989 fiscal year.

[4] Respondent concedes that if we do not find fraud the periods of limitations on assessment have expired.

reference.  At the time they filed their petitions, TECO had a mailing address in New Braunfels, Texas, Vernon resided in New Braunfels, Texas, and Janet resided in Edgewood, Texas.

In the early 1960s, TECO began operations.  TECO specialized in manufacturing commercial kitchen sinks and counter tops.  TECO promoted its products at trade shows throughout the United States.

By the mid-1960s, Jack Knauss (Mr. Knauss), Janet's father, and Bernie Knauss (Bernie) owned TECO.  In 1968, Vernon married Janet.  That same year, Vernon began working at TECO as a janitor (cleaning up the shop area).  Starting in 1969, Vernon worked full time for TECO.  Until approximately 1979, Vernon worked in the shop area of TECO operating the steel grinder, doing lab work, and supervising shipping.

Around 1979, Mr. Knauss moved Vernon to TECO's front office to groom Vernon to run TECO.  Initially, Vernon started at "the bottom" of the office.  From 1979 through 1982, Mr. Knauss trained Vernon on how to operate TECO.  In 1982, Mr. Knauss retired from TECO.[5]

---

[5]  During the years in issue, Vernon was the president of TECO.  Up until the time Mr. Knauss retired, Mr. Knauss owned 370 shares of TECO and Bernie owned the remaining 330 shares of TECO. In 1982, pursuant to a divorce decree, Mr. Knauss transferred his 370 shares of TECO to his ex-wife, Hallie Jean Culpepper (Ms. Culpepper), making Ms. Culpepper the majority shareholder of TECO--she owned 52.85 percent of TECO.  Ms. Culpepper was Janet's mother.

(continued...)

Mr. Knauss put TECO's accounting system in place. Sometime after Mr. Knauss retired, Vernon hired Patrick Allison, C.P.A. (Mr. Allison), to prepare TECO's income tax returns for the years in issue. At the time, Mr. Allison was the only C.P.A. located in Grand Saline, Texas.[6]

In order to prepare TECO's tax returns, Mr. Allison was given ledgers, summaries, bank statements, and canceled checks. Mr. Allison had full access to TECO's employees and could ask them any questions relating to the preparation of TECO's tax returns.

Neither Vernon nor Janet had an advanced knowledge of taxation. Vernon graduated from high school and attended Tyler Junior College for one semester. Vernon never took any

---

[5](...continued)
In 1985, Ms. Culpepper transferred 185 shares of her TECO stock to Janet. Janet then transferred 92 shares of her TECO stock to Vernon. At this time, Bernie owned 47.14 percent of TECO, Ms. Culpepper owned 26.43 percent of TECO, Janet owned 13.29 percent of TECO, and Vernon owned 13.14 percent of TECO.

Later that year, TECO purchased 329 shares of its stock from Bernie, and Vernon purchased 1 share of TECO stock from Bernie giving Vernon a total of 93 shares of TECO stock. At this time, Ms. Culpepper owned 49.86 percent of TECO, Janet owned 25.07 percent of TECO, and Vernon owned 25.07 percent of TECO.

Although at this time there was no single majority shareholder, if Janet and Vernon decided to combine their voting power they could outvote Ms. Culpepper--i.e., Janet and Vernon together owned 50.14 percent of TECO. As a result, Ms. Culpepper sued Vernon, Janet, and TECO to gain control of the company.

[6] From 1976 through part of 1989, TECO's manufacturing plant was located in Grand Saline, Tex.

accounting classes.  Janet graduated from high school and never attended college.

TECO issued Forms 1099-MISC, Miscellaneous Income, to Vernon for 1987, 1988, and 1989.  The Forms 1099 listed nonemployee compensation in the amounts of $5,250, $18,300, and $68,000 for 1987, 1988, and 1989, respectively.  Vernon and Janet believed that the amounts listed on these Forms 1099 covered the amount of personal expenses paid for, and withdrawals made by, Vernon out of TECO's funds.  Vernon and Janet mailed these Forms 1099 to the IRS.

Janet handled all of Vernon's personal finances.  Janet prepared the joint individual Federal income tax returns filed by Janet and Vernon for the years in issue.  Vernon did not sign the return for 1987.  He was out of town at the time Janet prepared it, and he did not review the return prior to its being filed.

On TECO's Forms 1120, U.S. Corporation Income Tax Return, for TY 1987, TY 1988, and TY 1989, TECO reported overpayments of taxes in the amounts of $14,187.50, $66,674.56, and $81,561.09, respectively.  Janet and Vernon's Form 1040, U.S. Individual Income Tax Return, for 1988 also reported an overpayment of taxes.  For each of these taxable years, instead of taking a refund, petitioners requested that the overpayment be applied to the next year's estimated taxes.

In 1990, Vernon and Janet separated.  They later divorced.

In May 1991, Vernon and Janet's joint Federal income tax returns for 1987, 1988, and 1989 were selected for audit. Revenue Agent Danny Craddock (RA Craddock) was assigned to the audit. During the audit, Vernon cooperated with RA Craddock. Vernon gave RA Craddock a desk inside TECO's office and allowed RA Craddock to copy documents and to speak with TECO employees unsupervised. TECO's officers, employees, and agents cooperated with the IRS during the audit of petitioners. Vernon answered RA Craddock's questions. When requested by RA Craddock, petitioners extended the period of limitations on assessment several times.

On August 22, 1991, RA Craddock referred the 1987, 1988, and 1989 tax years to the Internal Revenue Service (IRS) Criminal Investigation Division. Special Agent Andrew D. Bishop (SA Bishop) was assigned to conduct a criminal investigation of Vernon. RA Craddock assisted SA Bishop.

No criminal charges were brought against Janet. Vernon, however, was tried for violating section 7206(1), willfully making and subscribing a return under penalties of perjury that he did not believe to be true and correct as to every material matter, for 1988 and 1989. He was acquitted on both counts.

During the years in issue, TECO did not have income from illegal activities and did not deal in cash to avoid reporting income. Neither Vernon nor Janet had unexplained increases in net worth, had substantial expenditures over available sources,

had bank deposits from unexplained sources that substantially exceeded reported income, concealed bank accounts, used fictitious names or names of relatives to disguise ownership of assets, used a safe deposit box to hide valuables, utilized large sums of currency, kept a double set of books, made fictitious entries in or altered TECO's books, created fictitious invoices or other documents, concealed records, destroyed records, failed to keep records, refused to make records available, asked third parties to alter their records or hide their transactions with petitioners, had income from illegal activities, failed to file tax returns, made implausible or inconsistent explanations, or attempted to hinder, delay, or interfere with the IRS's investigation.

## OPINION

The statutory notices of deficiency determined that the deficiencies in their entirety were due to fraud. Respondent concedes that absent a finding of fraud, the periods of limitations for all the years in issue have expired. Respondent argues that the only reasonable inference that can be drawn from the facts of these cases is that Vernon, Janet, and TECO fraudulently understated their taxable income for each of the years in issue. We disagree.

The addition to tax and penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the

protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud.  Helvering v. Mitchell, 303 U.S. 391, 401 (1938).  Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing.  McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

The Commissioner has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  To satisfy this burden, the Commissioner must show:  (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).  The Commissioner must meet this burden through affirmative evidence because fraud is never imputed or presumed.  Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

Fraudulent Intent

The Commissioner must prove that a portion of the underpayment for each taxable year in issue was due to fraud.  Profl. Servs. v. Commissioner, 79 T.C. 888, 930 (1982).  The existence of fraud is a question of fact to be resolved from the entire record.  Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence, and

reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Mere suspicion, however, does not prove fraud. Katz v. Commissioner, 90 T.C. 1130, 1144 (1988); Shaw v. Commissioner, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958).

Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent. These badges of fraud include: (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash. Spies v. United States, supra at 499; Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603.

Petitioners' Sophistication

The sophistication, education, and intelligence of the taxpayer are relevant to determining fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Stephenson v. Commissioner, supra at 1006; Iley v. Commissioner, 19 T.C. 631, 635 (1952). There is no evidence suggesting that Vernon or Janet had any training in accounting, tax planning, or tax return preparation. They both have a high school education, and Vernon attended only one semester of junior college.

Petitioners' Credibility

Respondent repeatedly claims that petitioners' contentions are merely supported by their self-serving testimony. We disagree. Several witnesses corroborated Vernon and Janet's testimony. This included establishing: (1) TECO's bookkeepers coded TECO's checks, and when the bookkeepers were uncertain about how to code a check, they let Mr. Allison code the checks; (2) TECO checks were paid to Vernon so he could purchase business items for TECO in cash in order to get better prices; (3) Vernon conducted TECO business outside the office, including at home and in a separate structure (home office) located on the same property as Vernon and Janet's residence during the years in issue; (4) trips to Las Vegas, Nevada, were business related; (5) hunting trips were business related; (6) a country club membership was used for business related events; (7) a tractor was used at TECO for business purposes; and (8) Vernon was very

cooperative with the IRS and gave the IRS access to all of TECO's records.

Janet credibly testified that she made an honest attempt to come up with the figures listed on the Forms 1099. Additionally, the parties stipulated that Vernon and Janet intended for the amounts listed on these Forms 1099 to cover the amount of personal expenses paid for, and withdrawals made by, Vernon out of TECO's funds. Furthermore, RA Craddock testified that Vernon stated that he wanted to add the amounts listed on the Forms 1099 to his income for the years in issue to make sure that he did not owe any taxes.

At trial, respondent asked Janet[7] whether she thought she owed any more taxes. Janet responded: "There is no way on God's green earth that I thought I owed any taxes." Vernon also testified that when they filed their tax returns for 1987, 1988, and 1989 he was certain that they had paid more taxes than they owed. Vernon testified: "at this time, I was positive that I was overpaying. I was really proud to pay that amount of tax."

RA Craddock testified that Vernon was forthcoming and did not do anything to hide or cover up issues RA Craddock raised. Having had the opportunity to observe Janet and Vernon at trial, we find that their testimony was honest, forthright, and credible. Accordingly, we hold that their testimony does not

---

[7] We note that prior to the trial of this case, no representative of the IRS interviewed Janet.

indicate the presence of fraud.

Stipulations Related to the Badges of Fraud

The parties stipulated facts that expressly state or support the conclusion that most of the traditional badges of fraud do not exist in these cases. These stipulations included that petitioners did not: Maintain inadequate records, make implausible or inconsistent explanations, conceal assets, fail to cooperate with tax authorities, engage in illegal activities, intend to mislead, fail to file tax returns, or deal in cash. The trial testimony further leads us to conclude that none of the aforementioned badges of fraud are present in this case.

1.   Profit Sharing Plan

Respondent claims that petitioners' transactions with TECO's profit sharing plan were fraudulent. RA Craddock had a B.B.A. in general business and accounting and an M.B.A. Even with his experience as an auditor, his advanced degrees, and far more tax expertise than petitioners, he needed help from an expert on profit sharing plans about various highly technical issues regarding TECO's profit sharing plan. Vernon and Janet had no tax background or expertise. We do not believe that they had a level of tax knowledge or sophistication such that they intended or attempted to evade taxes via the profit sharing plan.

2.   Alleged Misleading of RA Craddock

Respondent claims that Vernon misled RA Craddock by providing RA Craddock with false or incomplete information. We

disagree.  Respondent makes this argument even though, as we previously noted, RA Craddock testified that Vernon was forthcoming and did not do anything to hide or cover up issues RA Craddock raised.  There is no evidence in the record that petitioners misled RA Craddock.

### 3.  Personal Expenses

Respondent contends that he established fraud by proving that Vernon and Janet paid personal expenditures with TECO funds, TECO deducted these personal expenses, and Vernon and Janet failed to report these amounts as income.

Petitioners do not deny that TECO paid personal expenses of Vernon and Janet.  In fact, Vernon was forthcoming and forthright in his testimony that TECO paid personal expenses of Vernon and Janet.

As we noted supra, Janet credibly testified that she made an honest attempt to come up with the figures listed on the Forms 1099, and the parties stipulated that Vernon and Janet intended for the amounts listed on these Forms 1099 to cover the amount of personal expenses paid for, and withdrawals made by, Vernon out of TECO's funds.  If petitioners failed to list the exact amount of Vernon and Janet's personal expenses paid for with TECO funds on the Forms 1099, we conclude that it was not due to fraud.

### 4.  Remaining Badges of Fraud

The remaining badges of fraud are understating income and filing false documents.  The evidence does not establish that

petitioners filed false documents.  Thus, the only badge left is understating income.

Relying Solely on an Understatement of Income To Establish Fraud

Respondent argues that he can establish fraud by relying solely on an understatement of income.  Respondent cites Schneider v. Commissioner, T.C. Memo. 1977-179, for the proposition that substantial amounts of unreported income over a period of years, without more, are sufficient evidence to establish fraud by clear and convincing evidence when the case is based on the specific items method of proof.  Respondent is incorrect.

In Schneider, Mr. Schneider pleaded guilty to filing a false and fraudulent income tax return for one of the years in issue in that case.  Additionally, Mr. Schneider converted income omitted from his returns to cash.  Thus, in Schneider, we did not base our finding of fraud solely on an understatement of income.  The criminal tax conviction (which established that the taxpayer filed false documents) and the conversion of omitted income to cash further supported our conclusion that Mr. Schneider's actions were fraudulent.

The U.S. Court of Appeals for the Fifth Circuit, to which an appeal in this case would lie, has held that "The mere understatement of income, standing alone, is not enough to carry

the burden cast upon the Commissioner in seeking to recover fraud penalties." Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Additionally, the Court of Appeals has held that even a consistent and substantial understatement of income is insufficient, by itself, to support a finding of fraud. Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1239 (5th Cir. 1978).

Respondent agrees that these cases are still good law in the Fifth Circuit. We are left, however, with nothing more than the possibility that petitioners understated their income.[8] On this record, we are not persuaded that the evidence establishes fraud on the part of petitioners. Id.; Merritt v. Commissioner, supra at 487.

Conclusion

After reviewing all of the facts and circumstances, we conclude that respondent has failed to sustain his heavy burden of proving by clear and convincing evidence that Vernon, Janet, or TECO intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes for any of the years in issue. Accordingly, we do not sustain any of the additions to tax or penalties for fraud.

---

[8] "A taxpayer who honestly but erroneously claims a deduction or fails to declare income is not liable for fraud." Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1238 n.72 (5th Cir. 1978).

Period of Limitations/Deficiencies

As we noted supra, respondent concedes that absent a finding of fraud the period of limitations for all of the years in issue expired.  Accordingly, petitioners are not liable for the deficiencies, additions to tax, or penalties for the years in issue.

To reflect the foregoing,

Decisions will be entered

for petitioners.