T.C. Memo. 2002-217

UNITED STATES TAX COURT

TERRELL EQUIPMENT COMPANY, INC., ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 13059-98, 13060-98,      Filed August 27, 2002.
            13112-98.

William A. Roberts, for petitioners Vernon W. Griffin and

Terrell Equipment Co., Inc.

Janet M. Griffin, pro se.[2]

Audrey M. Morris, for respondent.

---

[1] Cases of the following petitioners are consolidated herewith:  Vernon W. Griffin, docket No. 13060-98; and Janet M. Griffin, docket No. 13112-98.

[2] Petitioner Janet M. Griffin (Janet) was represented by Stephen C. Coen at trial and for the opening brief; however, Mr. Coen withdrew as counsel after the initial brief, but before the reply brief, was submitted.

MEMORANDUM OPINION

VASQUEZ, Judge:  This case is before the Court on petitioners' motions for award of litigation and administrative costs and attorney's fees pursuant to section 7430 and Rule 231.[3] We see no reason for an evidentiary hearing on this matter.  Rule 232(a)(2).  Accordingly, we rule on petitioners' motions based on the parties' submissions and the existing record.  Rule 232(a)(1).  The portions of our opinion on the merits in the instant case, Terrell Equip. Co. v. Commissioner, T.C. Memo. 2002-58 (Terrell I) (holding that respondent failed to prove by clear and convincing evidence that petitioners were liable for additions to tax and penalties for fraud), that are relevant to our disposition of this motion are incorporated herein by this reference.

After concessions,[4] the issues for decision are:  (1) Whether petitioners are the "prevailing party" in the underlying tax case; (2) whether petitioners unreasonably protracted the Court's proceeding; (3) whether Janet M. Griffin (Janet) exhausted her administrative remedies; and (4) whether the

---

[3]  All references to sec. 7430 are to such section as in effect at the time the petitions were filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[4]  Respondent concedes that petitioners Terrell Equip. Co., Inc. (TECO), and Vernon Griffin (Vernon) exhausted their administrative remedies and that all petitioners substantially prevailed and met the net worth requirements.

amounts of administrative and litigation costs claimed by petitioners are reasonable.

Section 7430 provides for the award of administrative and litigation costs to a taxpayer in an administrative or court proceeding brought against the United States involving the determination of any tax, interest, or penalty pursuant to the Internal Revenue Code. An award of administrative or litigation costs may be made where the taxpayer (1) is the "prevailing party", (2) exhausted available administrative remedies,[5] (3) did not unreasonably protract the administrative or judicial proceeding, and (4) claimed reasonable administrative and litigation costs. Sec. 7430(a), (b)(1), (3), (c); Portillo v. Commissioner, 988 F.2d 27, 28 (5th Cir. 1993). These requirements are conjunctive, and failure to satisfy any one will preclude an award of costs to petitioners. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

To be a "prevailing party" (1) the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented, and (2) at the time the petition in the case was filed, the taxpayer must meet the net worth requirements of 28 U.S.C. sec. 2412(d)(2)(B) (1994). Sec. 7430(c)(4)(A). A

---

[5] This requirement applies only to litigation costs. Sec. 7430(b)(1).

taxpayer, however, will not be treated as the prevailing party if the Commissioner establishes that the Commissioner's position was substantially justified.  Sec. 7430(c)(4)(B).  For purposes of the administrative proceedings, respondent's position is that which was articulated in the notice of deficiency.  Sec. 7430(c)(7)(B); Huffman v. Commissioner, 978 F.2d 1139, 1143-1147 (9th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-144; Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).  For purposes of the court proceedings, respondent's position is that which was set forth in the answer.  Sec. 7430(c)(7)(A); Huffman v. Commissioner, supra at 1147-1148; Maggie Mgmt. Co. v. Commissioner, supra at 442.

The substantially justified standard is "essentially a continuation of the prior law's reasonableness standard." Swanson v. Commissioner, 106 T.C. 76, 86 (1996).  A position is substantially justified if it is justified to a degree that could satisfy a reasonable person and has a reasonable basis in both fact and law.  Pierce v. Underwood, 487 U.S. 552, 565 (1988);[6] Portillo v. Commissioner, supra at 28; Huffman v. Commissioner, supra at 1147; Swanson v. Commissioner, supra at 86.  A position

---

[6]  Although the dispute in Pierce v. Underwood, 487 U.S. 552 (1988), arose under the provisions of the Equal Access to Justice Act (EAJA), 28 U.S.C. sec. 2412(d) (1994), the relevant provisions of the EAJA are almost identical to the language of sec. 7430.  Cozean v. Commissioner, 109 T.C. 227, 232 n.9 (1997). We, therefore, consider the holding in Pierce v. Underwood, supra, to be applicable to the case before us.  Id.

that merely has enough merit to avoid sanctions for frivolousness will not satisfy this standard. Pierce v. Underwood, supra at 566.

The determination of reasonableness is based on all of the facts and circumstances surrounding the proceeding and the legal precedents relating to the case. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 694-695 (1990). A position has a reasonable basis in fact if there is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Pierce v. Underwood, supra at 565. A position is substantially justified in law if legal precedent substantially supports the Commissioner's position given the facts available to the Commissioner. Coastal Petroleum Refiners, Inc. v. Commissioner, supra at 688. Determining the reasonableness of the Commissioner's position and conduct requires considering what the Commissioner knew at the time. Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner loses on the merits or concedes the case does not establish that a position was not substantially justified; however, it is a factor to be considered. Portillo v. Commissioner, supra at 28; Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part and revd. in part 43 F.3d 172 (5th Cir. 1995).

Petitioners argue that respondent's position was unsupportable by the stipulated facts.[7] Although we noted in Terrell I that some of the stipulated facts supported the conclusion that most of the traditional badges of fraud did not exist, the parties stipulated many facts that could have supported a finding of fraud. Some of these stipulated facts were:

1. In June 1987, Janet paid $1,513.82 for repair work on her son's BMW with a TECO check.

2. In September 1987, Janet paid $722.90 for service work on her son's BMW with a TECO check.

3. On September 20, 1987, Vernon instructed TECO's bookkeeper to write him a TECO check in the amount of $38,867. This check was deducted as "raw materials" on TECO's books; however, it was never used for the purchase of raw materials. Vernon deposited the $38,867 check into a personal bank account at First National Bank of Grand Saline (First National) jointly held by Vernon and Janet. The Griffins did not include the $38,867 in the amount reported on the Form 1099 listing the amount of personal expenses paid for, and withdrawals made by, Vernon out of TECO's funds for 1987.

_____

[7] In their motion, TECO and Vernon alleged that the facts in this case were fully stipulated. This assertion is incorrect. The trial of this case took 4 days, we heard factual testimony from numerous witnesses, and the trial transcript was more than 1,100 pages.

4.    On October 21, 1987, Vernon wrote a $35,000 check from the First National account to an investment brokerage firm.  This amount was a personal investment by Vernon.

5.    In November 1987, Vernon's sister received a TECO check for $3,700.  This check was deducted as a "miscellaneous" expense on TECO's books.

6.    On February 29, 1988, a $500 TECO check was given to Vernon's sister.  This check was deducted as a "miscellaneous" business expense on TECO's books.

7.    On March 25, 1988, Vernon received a $1,500 check from TECO.  This check was deducted as a "miscellaneous" business expense on TECO's books.

8.    On April 1, 1988, Vernon received a $10,000 check from TECO.  This check was deducted as a "miscellaneous expense" on TECO's books.  Vernon deposited the $10,000 check into a personal bank account at Southside State Bank of Tyler, Texas (Southside Bank), jointly held by him and Janet.

9.    On April 15, 1988, Vernon received an $8,500 check from TECO.  This check was deducted as a "miscellaneous expense" on TECO's books.  Vernon deposited the $8,500 check into the Southside Bank account.

10.    On May 10, 1988, Vernon used a TECO check to pay for work done on the lawn sprinkler system at his personal residence. This check was deducted as a "repairs" expense on TECO's books.

11.   From May 1988 through November 1989, Vernon and Janet paid, with TECO checks, service charges to Glamour Pools for the pool located at their personal residence.

12.   On July 7, 1988, Vernon purchased a 1988 Toyota 4 Runner for $23,047.01.  Vernon used a TECO check to pay part of the purchase price.  The vehicle was titled to Vernon, insured as a personal vehicle, and was driven exclusively by Vernon or members of his immediate family for personal use.

13.   In mid-1988, the Griffins had a fence constructed at their personal residence.  On July 5, 1988, Janet wrote a TECO check totaling $4,582.50 to Jim Young Fence Company to pay for the fence.  This check was deducted as a "miscellaneous" business expense on TECO's books.

14.   On December 9, 1988, a $1,200 TECO check was used to make a mortgage payment on Vernon's sister's house.  This check was deducted as an "operating supplies" expense on TECO's books.

15.   On December 21, 1988, Vernon received a $1,900 check from TECO.  This check was deducted as a "miscellaneous" business expense on TECO's books.

16.   In 1988, the Griffins backdated at least two checks.

17.   In 1988 and 1989, contrary to normal practices, Vernon failed to deposit receipts of TECO's scrap metal sales into TECO's business bank account.

18.   During 1988, Vernon and Janet wrote TECO checks

totaling $1,779.05 for the purchase of luggage, briefcases, and wallets. These checks were deducted as a "miscellaneous", "office supplies", "advertising", or "trade show" expenses on TECO's books.

19. In 1988, Vernon paid for a weight loss program he participated in with two TECO checks.

20. On their 1988 joint Federal income tax return, the Griffins claimed a mortgage interest deduction of $30,367 that they did not pay in 1988.

21. On March 17, 1989, Vernon received a company check for $39,000. This check was deducted as "raw materials" on TECO's books, but it never was used to purchase raw materials. Vernon deposited the $39,000 check into his Southside Bank account.

22. On March 20, 1989, Vernon wrote a $36,000 check from his Southside Bank account to the TECO pension plan. This check was dated December 19, 1988.

23. On March 24, 1989, Vernon received a $2,500 check from TECO. This check was deducted as "shop supplies" on TECO's books.

24. On April 28, 1989, Vernon and Janet purchased a motor home and made a $12,000 downpayment with a TECO check.

25. On June 30, 1989, Vernon received a check for $800 from TECO. This check was deducted as a "miscellaneous" business expense on TECO's books.

26. On June 27, 1989, a $1,278.28 TECO check was used to make a mortgage payment on Vernon's sister's house. This check was deducted as a "miscellaneous" business expense on TECO's books.

27. On September 5, 1989, Vernon purchased a $12,015.70 Harley-Davidson "Fatboy" with TECO funds. This motorcycle was used exclusively by Vernon and/or his immediate family.

28. In 1989 TECO purchased a 1989 Suburban. TECO later sold the Suburban to Bobby Moses. Janet deposited the check from Mr. Moses into a personal bank account she jointly held with Vernon.

29. During the years in issue, TECO purchased a $19,817 ski boat. This payment was deducted as a "miscellaneous" business expense on TECO's books. The boat was titled and registered in Vernon's name.

30. The TECO checks solely written to Vernon during 1987, 1988, and 1989 totaled $38,867, $21,900, and $42,300, respectively. These amounts do not include the numerous other personal expenses paid for by TECO. Janet and Vernon, however, caused TECO to issue Vernon Forms 1099 listing only $5,250, $18,300, and $68,000 for 1987, 1988, and 1989, respectively.

Respondent's burden of proving fraud by clear and convincing evidence is a heavy burden. Although some of the evidence in this case raised our suspicion about the possibility of fraud,

the evidence was insufficient for us to conclude that petitioners' actions were fraudulent.  <u>Katz v. Commissioner</u>, 90 T.C. 1130, 1144 (1988); <u>Shaw v. Commissioner</u>, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958).

Although we concluded that respondent failed to prove that Vernon and Janet intended to file false Forms 1040, U.S. Individual Income Tax Return, and 1099-MISC, Miscellaneous Income, on the basis of the evidence it was reasonable for respondent to believe that the Court could find that petitioners filed false Forms 1040 and 1099.  Furthermore, it was reasonable for respondent to believe that the Court could find that petitioners falsified the books and records of TECO and that the inaccurate records of TECO, listing improper deductions and uses of TECO funds, were part of a scheme to conceal petitioners' true income and expenses.  Additionally, it was reasonable for respondent to believe that the Court could find that petitioners filed false tax returns because they knew that the amount of income listed on their Forms 1040 and 1099 was understated and that nondeductible expenses were categorized as deductible items in TECO's books and records.

At trial, the Court had to determine the credibility of the witnesses, including petitioners, and reconcile the conflicting documentary and testimonial evidence.  <u>Johnson v. Commissioner</u>, T.C. Memo. 1999-237, affd. without published opinion 246 F.3d 674

(9th Cir. 2000). Although we found Vernon and Janet to be credible witnesses, on the basis of the evidence it was reasonable for respondent to believe that the Court would find Vernon and Janet liable for additions to tax and penalties for fraud.

Petitioners also assert that respondent's position was not supported by the law. Specifically, they refer to respondent's claim that pursuant to Schneider v. Commissioner, T.C. Memo. 1977-179, unreported income standing alone is sufficient to establish fraud by clear and convincing evidence.

In Terrell I, we rejected this argument. Although we agree with petitioners that this particular argument was not supported by the law, it was not respondent's primary argument. It was an alternative argument in case the Court found that none of the other badges of fraud, other than unreported income, were present. Respondent went to trial on the basis of the theory that multiple badges of fraud existed, and at trial he attempted to prove that multiple badges of fraud were present. Although in Terrell I, after hearing all the witnesses, evaluating all the testimony, and on the basis of the entire record, we concluded that respondent had failed to prove that any of the other badges of fraud were present, there was some evidence that could have allowed us to reach the opposite conclusion.

We conclude respondent has established that the position of

the United States was substantially justified at both the administrative and litigation level because it was a reasonable position sufficiently supported by the facts and circumstances of the case and the existing legal precedent.  Accordingly, petitioners are not the "prevailing party".  Sec. 7430(c)(4)(B)(i).

In light of our holding that respondent's position was substantially justified, we need not address whether (1) petitioners unreasonably protracted the Court's proceeding; (2) Janet exhausted her administrative remedies; or (3) the amounts of administrative and litigation costs claimed by petitioners are reasonable.

Accordingly, we hold that petitioners are not entitled to an award of administrative or litigation costs.

To reflect the foregoing,

<u>An appropriate order will be issued, and decisions will be entered for petitioners</u>.